**UNITED STATES DISTRCT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

RANDOLPH AND TABETHA SELLERS,
individually and on behalf of a class of
persons similarly situated,

     Plaintiff,

                                     Case No.:

vs.

RUSHMORE LOAN MANAGEMENT
SERVICES, LLC,

     Defendant.
_____/

**CLASS ACTION COMPLAINT**

Plaintiffs, RANDOLPH and TABETHA SELLERS ("Plaintiffs"), on behalf of

themselves and all others similarly situated, bring suit against Defendant, RUSHMORE LOAN

MANAGEMENT SERVICES, LLC, ("Defendant" or "RUSHMORE") as follows:

**INTRODUCTION**

1.      This is a class action brought pursuant to the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Florida Consumer Collection Practices Act

("FCCPA"), Fla. Stat. § 559.55 *et seq* and the Federal Declaratory Judgment Act, 28 U.S.C. §

2201.

2.      This action arises out of RUSHMORE's illegal efforts to collect consumer

debts. Specifically, RUSHMORE regularly attempts to collect debts previously discharged by

order of a Federal bankruptcy court. As Judge Posner stated: "Dunning people for their

discharged debts would undermine the 'fresh start' rationale of bankruptcy and is prohibited by

the [FDCPA] which … prohibits a debt collector from making a 'false representation of the character, amount, or legal status of any debt.'[1]

## JURISDICTION AND VENUE

3.       This Court has jurisdiction over the Plaintiffs' claims pursuant to 28 U.S.C. § 1331(b), 15 U.S.C. § 1692k, 28 U.S.C. §§ 2201(a) and 28 U.S.C. § 1334(b).

4.       Venue is appropriate under 28 U.S.C. § 1391 since Plaintiffs reside in this District and the conduct complained of occurred in this District.

## PARTIES

5.       Plaintiffs, RANDOLPH and TABETHA SELLERS, are natural persons and residents of Clay County, Florida.

6.       Defendant, RUSHMORE LOAN MANAGEMENT SERVICES, LLC ("RUSHMORE"), is a corporation doing business in Clay County, Florida.  Upon information and belief, Defendant is a registered debt collector with the Florida Office of Financial Regulation.

## FACTUAL ALLEGATIONS

7.       Sometime in 2004, Plaintiffs took out a loan from Premier Mortgage Funding, Inc. for a mortgage on their home at 6045 Oak Leaf Road, Keystone Heights, Florida 32656 ("the Loan").  The Loan was for personal, family, or household purposes and it is therefore a "debt" as that term is defined under the FDCPA at 15 U.S.C. § 1692a(5) and under the FCCPA at Fla. Stat. § 559.55(6).

---

[1] *Ross v. RJM Acquisitions Funding L.L.C.*, 480 F.3d 493, 495 (7th Cir. 2007).

8.      On or about February 16, 2011, Plaintiffs filed a voluntary Chapter 7 petition in U.S. Bankruptcy Court, Middle District of Florida, Jacksonville Division.  *In re Randolph Lane Sellers and Tabetha Lynn Sellers*, Case No.: 3:11-bk-00911.

9.      On June 2, 2011, the Plaintiffs received a Chapter 7 discharge.  See Exhibit A.

10.     Pursuant to the Chapter 7 bankruptcy discharge order, Plaintiffs were fully released from any and all personal monetary liabilities on the subject loan.

11.     On or about June 27, 2013, the Loan was transferred or assigned to RUSHMORE for servicing.  The loan was in default at the time it was transferred to RUSHMORE.

12.     Sometime starting in early 2014, Plaintiffs began receiving phone calls from representatives of RUSHMORE, attempting to collect amounts related to the Loan.  In order to stop the debt collection calls, Plaintiffs provided RUSHMORE with a copy of their Notice of Discharge.

13.     Despite knowledge and actual notice that the debt was no longer valid, RUSHMORE continues to dun the Plaintiffs and send monthly "Account Statements" for an amount in excess of $79,129.45.  (Plaintiffs' Account Statements are attached as Composite Exhibit B).  The Account Statements constitute an effort to collect a debt and reference, *"Mortgage Statement," "Total Amount Due," "Regular Monthly Payment," "Overdue Payment," "Due By," and "You are late on your mortgage payments."*

14.     Moreover, the "Account Statements" contain payment instructions, a payment amount, a payment deadline, and a tear-away payment coupon.  For example, Plaintiffs' October 10, 2014 Account Statement represents that Plaintiffs are to pay $79,129.45 by November 1,

2014, and even includes a tear-away payment coupon containing that amount and a blank space for "Total Amount Enclosed," which shows RUSHMORE clearly contemplated payment from Plaintiffs. See Exhibit B.

15.     Despite receiving a bankruptcy discharge in June 2011, Plaintiffs have received from RUSHMORE account statements and other correspondence every month since RUSMORE acquired the rights to service the loan at issue.

16.     Upon information and belief, the home at issue was sold by others in October 2014 and again in May 2015. Despite the transfer of ownership of the home and Plaintiffs' bankruptcy discharge, RUSHMORE still continues to request payments from Plaintiffs, with the latest correspondence dated May 11, 2015.

17.     RUSHMORE has no legal right to collect or attempt to collect any amount from the Plaintiffs or the putative class members.

18.     In addition, sometime in early 2014, RUSHMORE sent Plaintiffs and other class members a "W-9 Request for Taxpayer Identification Number and Certification Form," (hereinafter "IRS Collection Form") after they had filed for, and received, a bankruptcy discharge. Attached hereto as Exhibit C.

19.     RUSHMORE is well aware that there is no tax liability to the Plaintiff and other class members for discharged debt. However, the "least sophisticated consumer" would fear the threat of action by either RUSHMORE or the IRS after receiving the IRS Collection Form. (For purposes of the claims brought in this action, the applicable standard under the FDCPA in the Eleventh Circuit is "the least sophisticated" consumer test. See Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1175 (11th Cir. 1985) (adopting the test enunciated in Exposition Press Inc.v. FTC, 295 F.2d 869 (2d Cir. 1961)).

20.     Despite this, RUSHMORE sent the IRS Collection Forms to Plaintiffs and other class members, knowing that it would cause them to act.  RUSHMORE's collection methods are abusive, deceptive, and unfair since the Account Statement Letters and IRS Collection Forms threaten to take action that is not legally available to RUSHMORE.

## CLASS ALLEGATIONS

21.     Plaintiffs bring this claim pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class defined as:

> **ACCOUNT STATEMENT CLASS:**  All Florida consumers who were sent an  Account Statement by RUSHMORE in substantially the form of composite Exhibit B after receiving a Chapter 7 bankruptcy discharge of the mortgage debt at issue in the Account Statement.

> **IRS FORM CLASS:**  All Florida consumers who were sent an IRS Collection Form in substantially the form of Exhibit C after receiving a Chapter 7 bankruptcy discharge of the mortgage debt at issue in the IRS Collection Form.

22.     The class period for each claim in this Complaint is equivalent to the applicable statutes of limitations for each cause of action set forth below.

23.     Upon information and belief, RUSHMORE developed and regularly employs a business model and computer-software platform whereby RUSHMORE tracks when consumer are discharged from their debts through Bankruptcy.  Despite this information, RUSHMOR systematically seeks monetary recovery on discharged amounts from borrowers who received bankruptcy discharges on the promissory notes and mortgage loans.

24.     Upon information and belief, RUSHMORE intentionally and systematically sends such borrowers correspondence demanding payment of amounts discharged in bankruptcy, including but not limited to periodic account statements containing payment demands and detachable payment coupons in an effort to seek monetary recoveries on discharged debts.

25. The class is so numerous that joinder of all members is impractical. RUSHMORE routinely uses form "Account Statements" and IRS Collection Forms similar to Composite Exhibit B and Exhibit C when attempting to collect on these discharged debts. RUSHMORE uses the same form "Account Statements" in connection with its collection efforts in hundreds if not thousands of instances. Given the percentage of consumers who filed for Bankruptcy as a result of the recent economic downturn and who received an "Account Statement" during the appropriate time frame, it is reasonable to presume that there are at least hundreds of class members within the state of Florida.

26. There are questions of law and fact common to the class which predominates over any questions affecting only individual members. The principal issues raised by this claim are whether RUSHMORE's collection efforts regarding discharged debts violate the FDCPA and the FCCPA.

27. The only individual question concerns the identification of the persons whose consumer rights have been violated by RUSHMORE's practices, which are the subject of this complaint. This can be determined by ministerial examination of RUSHMORE's records.

28. The Plaintiffs' claims are typical of those of the class members. All are entitled to relief by virtue of RUSHMORE's violations of the consumer protection statutes asserted herein.

29. The Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel experienced in class actions as well as the handling of actions involving unlawful business practices, consumer mortgage loans and bankruptcy related class actions. Neither Plaintiffs nor their counsel have any interests antagonistic to the Class or which might cause them not to vigorously pursue this action.

30.    Certification of a class under Rule 23(b)(3) is appropriate, in that a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The interests of the class members in individually controlling the prosecution and defense of separate actions is minimal, in that the class members are unlikely to be aware that their rights were violated and in that individual actions are uneconomical. Difficulties likely to be encountered in managing this class action are substantially less that are involved in other types of cases routinely certified as class actions.

31.    RUSHMORE also acted and refused to act on grounds generally applicable to the Class, thereby making declaratory relief and corresponding final injunctive relief under Rule 23(b)(2) appropriate with respect to the Class as a whole.  RUSHMORE should be enjoined from attempting to collect debts from, and specifically sending "Account Statements" and IRS Collection Forms to consumers whose debts have been discharged in bankruptcy.

## COUNT I - VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692 *et seq.* ("FDCPA")
### On Behalf of the Account Statement Class

32.    Plaintiffs re-allege and incorporate paragraphs 1 through 31 as if fully set forth herein.

33.    This is an action seeking class-wide relief for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.  Specifically, by attempting to collect debts previously discharged in bankruptcy, RUSHMORE has violated the FDCPA.

34.    The FDCPA was enacted to protect all consumers from debt collectors who seek to collect debts through illegal means and who engage in unfair and/or deceptive practices during the collection of a debt.

35.     At all times material herein, Plaintiffs and others similarly situated were "consumers" as defined by 15 U.S.C. § 1692a(3) since they are natural persons allegedly obligated to pay a consumer debt.

36.     At all material times herein, Plaintiffs' debt and the debt of others similarly situated were consumer "debts" as defined by 15 U.S.C. 1692a(5), since they were obligations of a consumer to pay money arising out of a transaction in which the money and property which were the subject of the transaction were primarily for personal, family, or household purposes.

37.     At all times material herein, RUSHMORE was a "debt collector," as that term is defined by 15 U.S.C. § 1692a(6), since the debts at issue were in default at the time RUSHMORE acquired and/or began servicing them.

38.     The numerous "Account Statements" sent from RUSHMORE to Plaintiffs and others similarly situated were "communications" as that term is defined by 15 U.S.C. § 1692a(2), since they were mediums used to directly convey information on a debt.

39.     Plaintiffs filed a voluntary Chapter 7 bankruptcy petition on or about February 16, 2011.

40.     On June 2, 2011, the Plaintiffs received a Chapter 7 bankruptcy discharge.  See Exhibit A.

41.     At all material times herein, Defendant knew or should have known that the debt they were attempting to or did collect from the Plaintiffs and the Class Members had been discharged.

42.     In accordance with Plaintiffs' Chapter 7 bankruptcy discharge, Plaintiffs were fully released from any and all personal monetary liabilities on the subject loan.

43.     Despite actual notice that the debt was no longer valid, RUSHMORE continues to dun the Plaintiffs and send monthly "Account Statements" for an amount in excess of $79,000. (Plaintiffs' billing letters and Account Statements are attached as part of Composite Exhibit B). The Account Statements constitute an effort to collect a debt and reference, *"Mortgage Statement," "Total Amount Due," "Regular Monthly Payment," "Overdue Payment," "Due By," and "You are late on your mortgage payments."*

44.     Moreover, the "Account Statements" contain payment instructions, a payment amount, a payment deadline, and a tear-away payment coupon.  For example, Plaintiffs' October 10, 2014 Account Statement represents that Plaintiffs are to pay $79,129.45 by November 1, 2014, and even includes a tear-away payment coupon containing that amount and a blank space for "Total Amount Enclosed," which shows RUSHMORE clearly contemplated payment from Plaintiffs.  See Exhibit B.

45.     At the time RUSHMORE sent the abovementioned "Account Statements" to Plaintiffs and others similarly situated, all monetary amounts owed by Plaintiffs and others similarly situated had been discharged by bankruptcy proceedings and were no longer due and owing.

46.     By sending "Account Statements" to Plaintiffs and others similarly situated, RUSHMORE attempted to collect a debt and represented that it had a legal right to collect upon discharged monetary amounts.  RUSHMORE's conduct violates 15 U.S.C. § 1692e, which prohibits the use of false, deceptive, or misleading representations in connection with the collection of a debt.

47. In addition, RUSHMORE's abovementioned collection activities falsely represented/represent the character, amount, or legal status of a debt, in violation of 15 U.S.C. § 1692e(2)(A).

48. As a direct and proximate result of RUSHMORE's FDCPA violations, Plaintiffs and others similarly situated have been harmed. Plaintiffs and others similarly situated are entitled to actual damages, statutory damages under 15 U.S.C. § 1692k(a)(2)(B) and attorney's fees and the costs of this action pursuant to 15 U.S.C. § 1692k(a)(3).

49. For purpose of the claims brought in this action, the applicable standard under the FDCPA is "the least sophisticated" consumer test. *See* Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1172-75 (11th Cir. 1985).

50. Plaintiffs, on behalf of themselves and others similarly situated, retained the undersigned attorneys for the purposes of pursuing this matter against RUSHMORE and is obligated to pay their attorneys a reasonable fee for services.

51. Because Defendant's actions were intentional, willful and/or without regard for Plaintiffs' rights, Plaintiffs reserve the right to seek punitive damages upon the showing on the records of evidence sufficient to form the basis of a claim for punitive damages.

### COUNT II – VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT ("FCCPA")
**On Behalf of the Account Statement Class**

52. Plaintiffs re-allege and incorporate paragraphs 1 through 31 as if fully set forth herein.

53. At all times material herein, Plaintiffs and others similarly situated were "debtors" as defined by Fla. Stat. § 559.55(8).

54.     At all times material herein, Plaintiffs' debt and the debt of others similarly situated were "debts" or "consumer debts" as defined by Fla. Stat. § 559.55(6).

55.     At all times material herein, RUSHMORE was a "person" as referred to in Fla. Stat. § 559.72.

56.     The FCCPA, section 559.72(9) provides:

In collecting consumer debts, no person shall:

(9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, OR assert the existence of some other legal right when such person knows that the right does not exist.

Fla. Stat. § 559.72(9) (emphasis added).

57.     Plaintiffs filed a voluntary Chapter 7 bankruptcy petition on or about February 16, 2011.

58.     On June 2, 2011, the Plaintiffs received a Chapter 7 bankruptcy discharge.  See Exhibit A.

59.     At all material times herein, Defendant knew or should have known that the debt they were attempting to or did collect from the Plaintiffs and the Class Members had been discharged.

60.     In accordance with Plaintiff's Chapter 7 bankruptcy discharge, Plaintiffs were fully released from any and all personal monetary liabilities on the subject loan.

61.     Despite actual notice that the debt was no longer valid, RUSHMORE continues to dun the Plaintiffs and send monthly "Account Statements" for an amount in excess of $79,000. (Plaintiffs' November 2014 Account Statement is attached as part of Composite Exhibit B). The Account Statements constitute an effort to collect a debt and reference, *"Mortgage Statement,"*

*"Total Amount Due," "Regular Monthly Payment," "Overdue Payment," "Due By," and "You*

*are late on your mortgage payments.*"

62.     Moreover, the "Account Statements" contain payment instructions, a payment amount, a payment deadline, and a tear-away payment coupon.  For example, Plaintiff's October 10, 2014 Account Statement represents that Plaintiff is to pay $79,129.45 by November 1, 2014, and even includes a tear-away payment coupon containing that amount and a blank space for "Total Amount Enclosed," which shows RUSHMORE clearly contemplated payment from Plaintiff.  See Exhibit B.

63.     At the time RUSHMORE sent the abovementioned "Account Statements" to Plaintiffs and others similarly situated, all monetary amounts owed by Plaintiffs and others similarly situated had been discharged by bankruptcy proceedings and were no longer due and owing.

64.     Upon information and belief, Defendant routinely sends account statements to consumers attempting to collect monetary amounts that have been discharged in bankruptcy.

65.     However, RUSHMORE had no legal right to seek collection of these amounts from Plaintiffs and others similarly situated, and was in fact enjoined from doing so pursuant to bankruptcy discharge of the subject amounts.

66.     By sending "Account Statements" to Plaintiffs and others similarly situated on debts previously discharged in bankruptcy, RUSHMORE violated Fla. Stat. § 559.72(9) by claiming and attempting to enforce a debt which was not legitimate and not due and owing. Moreover, RUSHMORE violated the second portion of Fla. Stat. § 559.72(9) by asserting the existence of the legal right to collect debts previously discharged in bankruptcy when it knew that such right did not exist.

67.     As a direct and proximate result of RUSHMORE's FCCPA violations, Plaintiff

sand others similarly situated have been harmed.  Plaintiffs and the Class are entitled to actual

damages, statutory damages and attorney's fees and costs pursuant to Fla. Stat. § 559.77(2).

68.     In addition, Plaintiffs and the Class seek a permanent injunction prohibiting

RUSHMORE from sending "Account Statements" requesting payments for debts previously

discharged in bankruptcy.

69.     Plaintiffs, on behalf of themselves and others similarly situated, retained the

undersigned attorneys for the purposes of pursuing this matter against RUSHMORE and is

obligated to pay their attorneys a reasonable fee for services.

### COUNT III - VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT ("FCCPA")
#### On Behalf of the IRS Form Class

70.     Plaintiffs re-allege and incorporate paragraphs 1 through 31 as if fully set forth

herein.

71.     At all times material herein, Plaintiffs and others similarly situated were "debtors"

as defined by Fla. Stat. § 559.55(8).

72.     At all times material herein, Plaintiffs' debt and the debt of others similarly

situated were "debts" or "consumer debts" as defined by Fla. Stat. § 559.55(6).

73.     At all times material herein, RUSHMORE was a "person" as referred to in Fla.

Stat. § 559.72.

74.     The FCCPA, section 559.72 provides:

In collecting consumer debts, no person shall:

(7) ... willfully engage in other conduct which can reasonably be expected to abuse
or harass the debtor or any member of her or his family.

(9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, <u>OR</u> assert the existence of some other legal right when such person knows that the right does not exist.

Fla. Stat. § 559.72(7) and (9) (emphasis added).

75.     Plaintiffs filed a voluntary Chapter 7 bankruptcy petition on or about February 16, 2011.

76.     On June 2, 2011, the Plaintiffs received a Chapter 7 bankruptcy discharge.  See Exhibit A.

77.     At all material times herein, Defendant knew or should have known that the debt they were attempting to or did collect from the Plaintiffs and the Class Members had been  discharged.

78.     In accordance with Plaintiff's Chapter 7 bankruptcy discharge, Plaintiffs were fully released from any and all personal monetary liabilities on the subject loan.

79.     Despite actual notice that the debt was no longer valid, RUSHMORE sent Plaintiffs and other class members correspondence seeking personal financial information for the purpose of collecting debts.  Specifically, RUSHMORE sent Plaintiffs and other class members a "W-9 Request for Taxpayer Identification Number and Certification Form," (hereinafter "IRS Collection Form") after they had filed for, and received, a bankruptcy discharge.  Attached hereto as Exhibit C.

80.     RUSHMORE is well aware that there is no tax liability to the Plaintiff and other class members for discharged debt.  However, the "least sophisticated consumer" would fear the threat of action by either RUSHMORE or the IRS after receiving the IRS Collection Form.  (For purposes of the claims brought in this action, the applicable standard is "the least sophisticated"

consumer test. See Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1175 (11th Cir. 1985) (adopting

the test enunciated in Exposition Press Inc.v. FTC, 295 F.2d 869 (2d Cir. 1961)).

81.     Despite this, RUSHMORE sent the IRS Collection Forms to Plaintiffs and other

class members, knowing that it would cause them to act.  RUSHMORE's collection methods are

abusive, deceptive, and unfair since the Account Statement Letters and IRS Collection Forms

threaten to take action that is not legally available to RUSHMORE.

82.     Upon information and belief, Defendant routinely sends IRS Collection Forms to

consumers when it attempts to collect debts, in an attempt to gather personal financial information

under the threat of IRS review.  However, RUSHMORE had no such rights since Plaintiffs and

the Class members' debts have been discharged in bankruptcy.

83.     RUSHMORE had no legal right to seek collection of these amounts from Plaintiffs

and others similarly situated, and was in fact enjoined from doing so pursuant to bankruptcy

discharge of the subject amounts, in violation of Fla. Stat. § 559.72(9).

84.     Moreover, RUSHMORE's conduct of sending IRS Collection Forms to Plaintiffs

and Class members constitutes a violation of the second part of Fla. Stat. § 559.72(7), since

RUSHMORE's IRS threat is reasonably expected to abuse or harass the recipient.

85.     As a direct and proximate result of RUSHMORE's FCCPA violations, Plaintiffs

and the Class members have been harmed.  Plaintiffs and Class members are entitled to actual

damages, statutory damages, and attorney's fees and costs pursuant to Fla. Stat. § 559.77(2).

86.     In addition, Plaintiffs and the Class seek a permanent injunction prohibiting

RUSHMORE from sending out IRS Collection Forms similar to Exhibit C.

## COUNT IV – RELIEF REQUESTED UNDER THE DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201

87.     Plaintiffs re-allege and incorporate paragraphs 1 through 31 as if fully set forth herein.

88.     The Declaratory Judgment Act, 28 U.S.C. § 2201, offers a unique mechanism by which a party may seek to remedy ongoing violations of statutory provisions and to prevent ongoing harm in form of declaratory and injunctive relief.

89.     Specifically, the Declaratory Judgment Act states:

> In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

> Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

28 U.S.C. § 2201.

90.     Pursuant to 28 U.S.C. § 2201, this Court has the power to make binding declarations of the rights and obligations of the parties herein, and to adjudicate the dispute between the parties herein.

91.     Plaintiffs filed a voluntary Chapter 7 bankruptcy petition on or about February 16, 2011.

92.     On June 2, 2011, the Plaintiffs received a Chapter 7 bankruptcy discharge.  See Exhibit A.

93.     At all material times herein, Defendant knew or should have known that the debt they were attempting to or did collect from the Plaintiffs and the Class Members had been discharged.

94.     In accordance with Plaintiffs' Chapter 7 bankruptcy discharge, Plaintiffs were fully released from any and all personal monetary liabilities on the subject loan.

95.     Despite actual notice that the debt was no longer valid, RUSHMORE continues to dun the Plaintiffs and send monthly "Account Statements" for an amount in excess of $79,000. (Plaintiffs' November 2014 Account Statement is attached as part of Composite Exhibit B). The Account Statements constitute an effort to collect a debt and reference, *"Mortgage Statement," "Total Amount Due," "Regular Monthly Payment," "Overdue Payment," "Due By," and "You are late on your mortgage payments."*

96.     Moreover, the "Account Statements" contain payment instructions, a payment amount, a payment deadline, and a tear-away payment coupon.  For example, Plaintiffs' October 10, 2014 Account Statement represents that Plaintiffs are to pay $79,129.45 by November 1, 2014, and even includes a tear-away payment coupon containing that amount and a blank space for "Total Amount Enclosed," which shows RUSHMORE clearly contemplated payment from Plaintiffs.  See Exhibit B.

97.     At the time RUSHMORE sent the abovementioned "Account Statements" to Plaintiffs and others similarly situated, all monetary amounts owed by Plaintiffs and others similarly situated had been discharged by bankruptcy proceedings and were no longer due and owing.

98.     Upon information and belief, Defendant routinely sends account statements to consumers attempting to collect monetary amounts that have been discharged in bankruptcy.

99.     However, RUSHMORE had no legal right to seek collection of these amounts from Plaintiffs and others similarly situated, and was in fact enjoined from doing so pursuant to bankruptcy discharge of the subject amounts.

100.    In addition, sometime in early 2014, RUSHMORE sent Plaintiffs and other class members a "W-9 Request for Taxpayer Identification Number and Certification Form," (hereinafter "IRS Collection Form") after they had filed for, and received, a bankruptcy discharge. Attached hereto as Exhibit C.

101.    RUSHMORE is well aware that there is no tax liability to the Plaintiff and other class members for discharged debt.  However, the "least sophisticated consumer" would fear the threat of action by either RUSHMORE or the IRS after receiving the IRS Collection Form.  (For purposes of the claims brought in this action, the applicable standard is "the least sophisticated" consumer test. See Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1175 (11th Cir. 1985) (adopting the test enunciated in Exposition Press Inc. v. FTC, 295 F.2d 869 (2d Cir. 1961)).

102.    Despite this, RUSHMORE sent the IRS Collection Forms to Plaintiffs and other class members, knowing that it would cause them to act.  RUSHMORE's collection methods are abusive, deceptive, and unfair since the Account Statement Letters and IRS Collection Forms threaten to take action that is not legally available to RUSHMORE.

103.    RUSHMORE has sought payment for debts previously discharged in bankruptcy, in circumvention of existing federal court orders of bankruptcy courts, the FDCPA, FCCPA.

104.    RUSHMORE's conduct as described herein should be declared to be unlawful.

105.    RUSHMORE should be enjoined from sending IRS Collection Forms and "Account Statements" requesting payments for debts previously discharged in bankruptcy.

106.     RUSHMORE should be forced to disgorge all ill-gotten gains collected from consumers as a result of its unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter an Order:

a.     Certifying this action as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class Representatives, and appointing undersigned as Class Counsel;

b.     Adjudging that Defendant violated the FDCPA sections enumerated above, and awarding Plaintiffs and Class members actual and statutory damages pursuant to 15 U.S.C. § 1692k;

c.     Adjudging that Defendant violated the FCCPA, Fla. Stat. §§ 559.72(7) and (9), and awarding Plaintiffs and Class members actual and statutory damages pursuant to Florida Statutes § 559.77(2);

d.     Declaring that Defendant's attempt to collect debts previously discharged in bankruptcy is unlawful;

e.     Enjoining Defendant from sending Account Statements similar to those attached as "Exhibit B" in the manner described in this lawsuit;

f.     Enjoining Defendant from sending IRS Collection Forms similar to the one attached as "Exhibit C" in the manner described in this lawsuit;

g.     Ordering disgorgement of all ill-gotten sums collected in violation law;

h.     Awarding Plaintiffs, and all those similarly situated, reasonable attorney's fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3), and Florida Statutes § 559.77(2);

i.      Awarding Plaintiffs, and all those similarly situated, any pre-judgment and post-

judgment interest as may be allowed under the law; and

j.      Awarding such other and further relief as the Court may deem just and proper.

<u>**JURY TRIAL DEMAND**</u>

Plaintiffs demand jury trial on all issues so triable.


Dated: <u>September 10, 2015</u>                         **VARNELL & WARWICK, P.A.**


                                                        s/ Janet R. Varnell
                                                        JANET R. VARNELL
                                                        Florida Bar No.:  0071072
                                                        BRIAN W. WARWICK
                                                        Florida Bar No.:  0605573
                                                        STEVEN T. SIMMONS, JR.
                                                        Florida Bar No.:  0091654
                                                        P.O. Box 1870
                                                        Lady Lake, FL  32158
                                                        Telephone: (352) 753-8600
                                                        Facsimile:  (352) 504-3301
                                                        jvarnell@varnellandwarwick.com
                                                        bwarwick@varnellandwarwick.com
                                                        ssimmons@varnellandwarwick.com
                                                        kstroly@varnellandwarwick.com

                                                        **MAX STORY, P.A.**
                                                        MAX STORY
                                                        Florida Bar No: 527238
                                                        328 2nd Avenue North, Suite 100
                                                        Jacksonville Beach, FL  32250
                                                        Telephone:  (904) 372-4109
                                                        Facsimile:   (904) 758-5333
                                                        max@maxstorylaw.com

                                                        *Attorneys for Plaintiff*