UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RANDOLPH AND TABETHA
SELLERS, individually and on behalf of a
class of persons similarly situated,

       Plaintiffs,                              Case No.: 3:15-cv-1106-TJC-PDB

vs.

RUSHMORE LOAN MANAGEMENT
SERVICES, LLC,

       Defendant.

_____

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW

Randolph and Tabatha Sellers ("Plaintiffs") seek certification of this class action on behalf of themselves and all others similarly situated, to secure redress for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 *et seq* and the Declaratory Judgment Act, 28 U.S.C. § 2201. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs move the Court for an Order certifying the Class as defined herein and/or such other classes or subclasses as may be appropriate.

### I. INTRODUCTION

Bankruptcy is supposed to result in a fresh start for the consumers. Once a debt is discharged, debt collectors are supposed to stop dunning the consumer on the discharged debt. However, Rushmore does not stop dunning debtors after bankruptcy. Nor does it stop after the foreclosure proceedings have concluded. Nor does it stop when the house is sold to a third party. Nor does it stop when the house is sold to a second third party. Instead, for more than five years

after discharge, Rushmore continued to send monthly billing statement to Plaintiffs and the class which plainly state a monthly "Amount Due," states that late charges will accrue for payments not timely received, lists overdue payment amounts from the previous month, purports to impose new fees, and finally, includes a tear away payment coupon to be submitted along with payment. (Ex. A, compilation).  These are dunning letters which ask consumers to pay on a debt that has been previously discharged.  Plaintiffs assert that sending these billing statements is misleading to the least sophisticated consumer in violation of § 1692e of the FDCPA and  Fla. Stat. § 559.55 of the FCCPA which prohibit the use of false, deceptive, or misleading representations in connection with the collection of a consumer debt.

Rushmore takes the untenable position that these billing statements are for informational purposes only and are not seeking to collect a debt.  In support of its practice, Rushmore includes the following "Additional Notices" section on the back of page 2 of its monthly billing statement:

ADDITIONAL NOTICES
Rushmore Loan Management Services, LLC is a Debt Collector, who is attempting to collect a debt.  Any information obtained will be used for that purpose.  However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is sent for information purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

(Ex. A).

Whether or not Rushmore's disclosure language can transform an obvious attempt to collect a debt into the exact opposite is the predominating common issue in this case.  Since the practice is uniform and the documents are standardized, class certification is appropriate.

In *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254 (2014), the Eleventh Circuit recognized the problem of debt collectors abusing vulnerable consumers who are desperately

trying to get a fresh start after bankruptcy.  There, the debtor filed Chapter 13 Bankruptcy and LVNV Funding, filed a proof of claim on a stale debt.  The Court took action to protect consumers from what it described as a "deluge" of improper debt collection activity that was sweeping through the courts and found that the "FDCPA's broad language, our precedent, and the record compel the conclusion that defendants' conduct violated a number of the Act's protective provisions.  *See id.* §§ 1692(e), 1692d-1692f."  Plaintiffs ask that this Court do the same and certify this matter pursuant Federal Rule of Civil Procedure 23.

## II.    FACTS PERTINENT TO CLASS CERTIFICATION

Plaintiffs purchased a home in 2007 and received a mortgage loan for the purchase of the property.  (Ex. B, T. Sellers depo at 21).

Due to the recession, Plaintiffs could not afford to make payments on their mortgage loan and went into default sometime in 2008.  (Ex. B, T. Sellers at 24).

Plaintiffs filed a voluntary Chapter 7 bankruptcy petition on or about February 16, 2011. (Exhibit A to Complaint Doc. 1).   On June 2, 2011, the Plaintiffs received a Chapter 7 bankruptcy discharge.  *Id.*   In accordance with Plaintiffs' Chapter 7 bankruptcy discharge, Plaintiffs were fully released from any and all personal liability on the subject loan.

On June 27, 2013, more than two years after discharge, Plaintiff's loan was transferred or assigned to Rushmore for servicing. (Ex. C, Bennett depo at 11-12, Ex.3).  The loan was in default at the time it was transferred to RUSHMORE. (Ex. C, Bennett depo at 13-14).

Rushmore received notice of the discharge when it took over servicing the loan.  Despite actual notice that the debt was no longer valid, Rushmore issued monthly billing statements to Plaintiffs seeking payment on the discharged debts.   (Plaintiffs' billing letters and Account Statements are attached as part of Composite Ex. A).

The uniform monthly billing statements constitute an effort to collect a debt and specifically reference, *"Mortgage Statement," "Total Amount Due," "Regular Monthly Payment," "Overdue Payment," "Due By," and "You are late on your mortgage payments."* *Id.*

Moreover, the billing statements contain payment instructions, a payment amount, a payment deadline, and a tear-away payment coupon containing that amount to be paid and a blank space for "Total Amount Enclosed." *Id.*   At the time RUSHMORE sent the abovementioned "Account Statements" to Plaintiffs and others similarly situated, all monetary amounts owed by Plaintiffs and others similarly situated had been discharged by bankruptcy proceedings and were no longer due and owing.

These billing statements are uniform documents sent regularly to Plaintiffs and the class. Rushmore includes the following "Additional Notices" section on the back of page 2 of its monthly billing statement:

ADDITIONAL NOTICES

Rushmore Loan Management Services, LLC is a Debt Collector, who is attempting to collect a debt.  Any information obtained will be used for that purpose.  However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is sent for information purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

(Ex. A).

As disclosed in its billing statements, RUSHMORE is a "debt collector," as that term is defined by 15 U.S.C. § 1692a(6), since the debts at issue were in default at the time RUSHMORE acquired and/or began servicing them.

The numerous billing statements sent to Plaintiffs and the class by Rushmore are "communications" as that term is defined by 15 U.S.C. § 1692a(2), since they were mediums used to directly convey information on a debt.

4

### III.    THE PROPOSED CLASS SATISFIES THE REQUIREMENTS FOR CLASS CERTIFICATION

"Letter class actions" of this nature for violations of the FDCPA are imminently certifiable. *See, e.g., Agan v. Katzman & Korr, P .A.,* 222 F.R.D. 692 (S.D.Fla.2004); *Fuller v. Becker & Poliakoff, P.A.,* 197 F.R.D. 697 (M.D.Fla.2000); *Swanson v. Mid Am, Inc.,* 186 F.R.D. 665, 666-69 (M.D.Fla.1999); *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp.*, No. 8:08-CV-493-T-26TGW, 2008 WL 3850657 (M.D. Fla. Aug. 14, 2008).   The reason that letter cases are so readily certifiable is because a Court can view the content of the common communications and determine for all class members whether they violate the FDCPA and the FCCPA which are strict liability statutes.   Moreover, the "least sophisticated consumer" standard to be applied to FDCPA and FCCPA claims means that there are no individual interpretations or reliance issues to contend with. *See* Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1172-75 (11th Cir. 1985).

### A.    STANDARD FOR CLASS CERTIFICATION.

In order for a class to be certified, all four requirements of Rule 23 (a) must be satisfied along with one of the three categories of Rule 23(b).  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997).   The substantive allegations of the complaint should generally be taken as true. *In re Carbon Dioxide Antitrust Lit.*, 149 F.R.D. 229, 232 (M.D. Fla. 1993). "Rule 23 must be liberally interpreted" and read to "favor maintenance of class actions".  *Kins v. Kansas City Southern Industries*, 519 F.2d 20, 25-26 (7th Cir. 1975). Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. § 1692k(a) and (b) for FDCPA class actions. 15 U.S.C. § 1692k(a) and (b).

The proposed Class is defined as

All Florida consumers who: (a) had or have a residential mortgage loan that was acquired by RUSHMORE and/or transferred to RUSHMORE for servicing when in default; (b) received a Chapter 7 bankruptcy discharge of their mortgage debt; and (c) were sent an "Account Statement," in substantially the same form as those attached as Exhibit B to the Complaint, from RUSHMORE during the respective applicable statute of limitations.

## B.      RULE 23(a) IS SATISFIED

All requirements of Rule 23(a) of the Federal Rules of Civil Procedure are satisfied by the proposed Classes.

### 1.      Numerosity

The Classes are so numerous that joinder of all members is impractical.  Fed. R. Civ. P. 23(a)(1).  The focus of this inquiry "is not whether the number of proposed class members is 'too few' to satisfy the Rule, but 'whether joinder of proposed class members is impractical.'"  *Sharf v. Financial Asset Resolution, LLC*, 295 F.R.D. 664, 669 (S.D. Fla. January 16, 2014) (quoting *Armstead v. Pingree*, 629 F.Supp. 273, 279 (M.D. Fla. 1986)).  The Rule does not establish a precise numerical threshold, but parties seeking class certification "must make reasonable estimates that the class to be certified will satisfy the numerosity requirement."  *Williams v. Wells Fargo Bank, Nat'l Ass'n*, 280 F.R.D. 665, 672 (S.D. Fla. 2012).

In this case, stipulates that there are more than 40 individuals who received account statements in form of Exhibit E to the Complaint after receiving their bankruptcy discharge. The Defendant stipulated that the class consists of more than 40 class members and is therefore sufficiently numerous. (Ex. C, Bennett depo at 54 – 55)[1].  Therefore, the numerosity element of Rule 23 is satisfied.

### 2.      Commonality

Rule 23(a)(2) of the Federal Rules of Civil Procedure requires "questions of law or fact

---

[1] "Mr. Lynch:  No. we're going to oppose certificatin like crazy for a lot of reason, but on the one prong numerosity, we would stipulate to that. … Mr. Story:  More than 40? Mr. Lynch:  Yes."  (Bennett Depo p. 54-55).

common to the class." "This part of the rule does not require that all the questions of law and fact raised by the dispute be common or that the common questions of law or fact predominate over individual issues." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (internal quotations and citation omitted). Rather, commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). For purposes of Rule 23(a)(2), even a single common question of law *or* fact will do. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Here, there are questions of fact or law common to the class, which predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(a)(2), Fed. R. Civ. P. 23(a)(3). These common questions focus on the Account Statements and include, but are not limited to:

a. Whether the account statements were an attempt to collect a debt;

b. Whether, given the relationship of the parties, Defendant's communications violated the FDCPA;

c. Whether, given the relationship of the parties, Defendant's communications violated the FCCPA;

d. Whether the disclaimer language cured any debt collection attempt or, instead, whether the disclaimers were likely to confuse or mislead the least sophisticated consumer and therefore, violate the FDCPA and FCCPA.

Each of these common questions will lead to answers common to the Class, advancing the litigation for all Class members "in one stroke." See *Dukes*, 131 S.Ct. at 2551. Commonality in FDCPA claims involving form letters is easily established. To establish commonality, Plaintiff needs to merely allege that all class members received substantially

similar letters relating to a debt Defendant knew to be discharged in a prior Bankruptcy. *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 668 (M.D.Fla. 1999)("To establish commonality, it is sufficient that plaintiff allege that all class members received the same collection letter.")  "The very definition of this class logically involves common questions, such as whether the subject collection letter violates 15 U.S.C. §1692g." *Macarz v. Transworld Systems, Inc.*, 193 F.R.D. 46, 49 (D. Conn. 2000).

This is exactly what Plaintiffs have alleged here.  The collection activities of the Defendant -- like those of any mortgage servicer of defaulted loans or any debt collection firm-- are systematized.  The collectors must necessarily act indiscriminately in the treatment of consumers from whom they attempt to collect debts by means of standard collection documents. Rushmore's corporate representative testified that Rushmore routinely sends automatically generated account statements to all debtors.  (Ex. C, Bennett depo at 39).  Rushmore also admits that these form account statements were sent after Rushmore was aware of the Plaintiff's bankruptcy.  (Ex. C, Bennett depo at 40).  Rushmore maintains notes in its files when a debtor files for bankruptcy protection.  (Ex. C, Bennett depo at 40).  Importantly, Rushmore uses the exact same Account Statements for people who have and who have not filed for bankruptcy.  (Ex. C, Bennett depo at 45).  In other words, Rushmore sends the exact same account statements when seeking to collect monthly payments from debtors that it sends to discharged debtors for "informational purposes only."  *Id*.  Rushmore contends that the same exact document is used both to collect a debt and not to collect a debt.  (Ex. C, Bennett depo at 45).

Regardless of whether Plaintiffs or Rushmore is correct on the legal claims advanced, the documents are common and the interpretation of those documents for all discharged debtors will be common.  Whether Rushmore's practice of sending monthly account statements after debts

have been discharged violates the FDCPA and the FCCPA will turn on the language of these uniform documents when viewed under the "least sophisticated consumer" standard.   Therefore, the entire class has been subject to this common course of conduct and the commonality element of Rule 23 has been established.

### 3.   Typicality

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that "the claims or defense of the representative parties [be] typical of the claims or defenses of the class."  "Typicality … does not require identical claims or defenses."  *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).  Rather, typicality "is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory."  *Id.*  Moreover, "[d]ifferences in the amount of damages between the class representative and other class members does not affect typicality." *Id.*

Plaintiffs' claims are typical of the claims of the Class because they all arise from identical allegations, namely that Rushmore's attempts to collect on debts that have been discharged in Bankruptcy.  The essence of Plaintiffs' claims is precisely the same, and Rushmore's defenses thereto are also identical.  Accordingly, because a determination as to the liability of Plaintiffs' claims will necessarily advance the interests of all Class members, Plaintiffs' facts and claims are typical of the facts and claims of all other members of the proposed Class.

Plaintiff took out a mortgage loan on her home at 6045 Oak Leaf Road, Keystone Heights, Florida 32656 ("the Loan").  The Loan was for personal, family, or household purposes and it is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and Fla. Stat. § 559.55(1). On or about February 16, 2011, Plaintiff and her husband filed a voluntary Chapter 7

petition in U.S. Bankruptcy Court. On June 2, 2011, the Plaintiff received a Chapter 7 discharge. (Ex. C, Bennett depo at 11).  Pursuant to the Chapter 7 bankruptcy discharge order, Plaintiff was fully released from any and all personal monetary liabilities on the subject loan.

On June 27, 2013, the Loan was transferred or assigned to Rushmore for servicing. (Ex. C, Bennett depo at 14). The loan was in default at the time it was transferred to Rushmore. (Ex. C, Bennett depo at 15-16). Defendant sent a number of automatically generated communications which asserted that Plaintiffs owed a debt based on the mortgage loan. (Ex. C, Bennett depo at 39-40).  These communications include Mortgage Account Statements and tax related documents.  *Id.*

Furthermore, Rushmore's Corporate Representative testified that the Sellers were not treated any differently than any other homeowners:

> Q:      In reviewing the plaintiff, the Sellers', file for the deposition today, did you observe anything in the file that was atypical of the way that Rushmore handles its loans?
>
> MR. LYNCH: Object to form, but you can answer.
>
> A:      In my research of this file I didn't see anything that raised an eyebrow or was outside of the training that I had received or policies that I have read for this specific loan.
>
> BY MR. STORY:
>
> Q:      There is no specific way that Rushmore singled out the Sellers and treated them differently, correct?
>
> MR. LYNCH: Object to form, but you can answer.
>
> A:      I don't see we treated them any differently than any other homeowner.

(Ex. C, Bennett depo at 61-62).

Therefore, typicality is satisfied.

10

4.        **Adequacy of Representation**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  "[T]his requirement applies to both the named plaintiff and counsel," and "the requirement's purposes is to protect the legal rights of absent class members."  *London v. Wal-Mart Stores*, 340 F.3d 1246, 1253 (11th Cir. 2003) (internal quotations omitted). Additionally, this requirement is meant "to uncover conflicts of interest between named parties and the class they seek to represent."  *Id.*

Both prongs of the "adequacy" test are met here.  First, Plaintiffs have retained counsel experienced in class action litigation to prosecute her claims and those of the Class.  Plaintiffs' counsel has been certified to represent classes in state and federal courts throughout the country, including the Middle District of Florida.  (Ex. D, Decl. of Varnell).

Second, there is no conflict between Plaintiffs and the Class, and Plaintiffs share with the Class the same interest in establishing that Defendant violated the FDCPA and the FCCPA as result of its own actions and business practices.  As stated above, there is nothing peculiar about the seller' transaction that would make them inadequate to represent the class in this case.  In fact, Plaintiff, Tabetha Sellers, explains the misleading nature of the communications from Rushmroe in a nutshell:

> THE WITNESS: We just believed that because of what they were telling us that we could still be held financially obligated to the difference between what was accruing and what the home would sell for.  And when they told us that a foreclosure would go right up against the bankruptcy, it was scary because we thought, we honestly thought that doing the bankruptcy and being discharged from that was our -- we always have tried to pay our bills. Deciding to do a bankruptcy was not an easy decision for us. It wasn't easy to know that we were going to have to do this. So once we decided to do that and we got discharged, we honestly thought it's going to take, we're going to have to start over, but we can do it. We can rebuild our credit. And that's what we have been doing

11

since we were discharged, was trying to rebuild our credit and trying to have a fresh start from all of this. And it's been a lot of years between each mortgage company and then the bankruptcy, and then thinking that we've taken care of everything legally that we were supposed to take care of.

And then to start getting this, these statements every month, and seeing it just go up and up and up. And then with what I was being told on the phone by the Rushmore representative, I honestly thought, oh, my gosh, are we going to be even in a worse hole than we were before we filed the bankruptcy?  That was my thought process.

(Ex. B, T. Sellers depo at 58-59).

Because Plaintiffs and class counsel will adequately protect the interests of the Class, the adequacy prong of Rule 23 is also established here.

### C.    RULE 23(b)(3) IS SATISFIED

An action may be maintained as a class action if the four elements described above are satisfied, and in addition, certain other conditions under Rule 23(b)(3) are met:

[T]he Court finds that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a Class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

### 1.    Predominance

At its core, the predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).  The Supreme Court recently reiterated: "Rule 23(b)(3) ... does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claims [is] susceptible to classwide proof,'" but that "common questions '*predominate* over any questions affecting only individual [class] members.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184,

1196 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2552 n.6 (2011)) (emphasis added). Accordingly, plaintiffs must make a "showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Id.* at 1191.

Courts routinely find that cases dealing with the legality of standardized documents are generally appropriate for resolution by class action because the document is the focal point of the analysis. *Halverson v. Convenient Food Mart, Inc., supra; Brooks v. Midas-International Corp.*, 47 Ill.App.3d 266, 361 N.E.2d 815 (1st Dist. 1977) (claim that advertising conveyed meaning that exhaust systems would be replaced free of charge); *Spirek v. State Farm Mut. Auto. Ins. Co.*, 65 Ill.App.3d 440, 382 N.E.2d 111 (1st Dist. 1978) (propriety of insurer's practice in requiring execution of subrogation agreements before paying medical benefits); *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161 (7th Cir. 1974) (propriety of disclosure documents under Truth in Lending Act); *Haroco v. American Nat'l Bk. & Tr. Co.*, 121 F.R.D. 664, 669 (N.D.ILL. 1988) (improper computation of interest on form document); *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683 (N.D. Ga. 1983) (same); *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669 (N.D. Ill. 1989) (execution of home improvement financing documents in sequence that evaded consumers' rescission rights).  This is true even though the nature and amount of damages may differ among the members of the class. *Id.*

Furthermore, "letter class actions" of this nature for violations of the FDCPA are imminently certifiable.  *See, e.g., Agan v. Katzman & Korr, P .A.,* 222 F.R.D. 692 (S.D.Fla.2004); *Fuller v. Becker & Poliakoff, P.A.,* 197 F.R.D. 697 (M.D.Fla.2000); *Swanson v. Mid Am, Inc.,* 186 F.R.D. 665, 666-69 (M.D.Fla.1999); *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp.*, No. 8:08-CV-493-T-26TGW, 2008 WL 3850657 (M.D. Fla. Aug. 14, 2008).  The

reason that letter cases are so readily certifiable is because a Court can view the content of the common communications and determine for all class members whether they violate the FDCPA and the FCCPA which are strict liability statutes.  Moreover, the "least sophisticated consumer" standard to be applied to FDCPA and FCCPA claims means that there are no individual interpretations or reliance issues to contend with. See *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1172-75 (11th Cir. 1985).

Because of the standardized nature of Defendant's conduct, common questions predominate. Here, Plaintiffs have alleged such a common course of conduct by Defendant.  All members of the Classes, by definition, were subjected to the same practices when they received the dunning account statements from Rushmore after bankruptcy.  In particular, the class is limited to individuals that were sent communications substantially similar to the ones sent to Plaintiffs.  Rushmore's corporate representative testified that Rushmore routinely sends automatically generated account statements to all debtors.  (Ex. C, Bennett depo at 39). Rushmore also admits that these form account statements were sent after Rushmore was aware of the Plaintiff's bankruptcy.  (Ex. C, Bennett depo at 40).  Rushmore maintains notes in its files when a debtor files for bankruptcy protection and receives a discharge.  (Ex. C, Bennett depo at 40).  Moreover, Rushmore uses the exact same monthly Account Statements for people who have and who have not filed for bankruptcy.  (Ex. C, Bennett depo at 45).

Whether the systematic communications sent to debtors whose debt had been discharged in bankruptcy were attempts to collect a debt in violation of law is the overarching issue and does not change from one member to the next.  The determination of whether particular form communications violate the consumer protection laws is the central predominating issue before

14

the Court.  Because the letters at issue are forms, a determination as to whether those communications violate the law will predominate over any individual issues.

Similarly, the defenses asserted present common issues of law and fact.  It is anticipated that Defendant will assert that disclaimer language which appears on the back of its standardized account statements cured any violative language.  The disclaimer language is also part of the form communication at issue.  It is the Plaintiffs' position that any disclaimer language, at best, created confusion and was therefore misleading to the least sophisticated consumer.  Just as a disclaimer language does not automatically trigger the protections of the FDCPA, the absence of language does not have dispositive significance. *Gburek,* 614 F.3d at 386 n. 3 (7th Cir.2010) (involving a mortgage loan); *Lewis v. ACB Bus. Servs., Inc.,* 135 F. 3d 389, 400 (6th Cir.1998). Further, Courts examining similar disclaimer language used by Mortgage Servicers in the precise context at issue in this case have rejected the defense finding that *the contradiction between a demand for payment and a conditional disclaimer would confuse the least sophisticated consumer.  Barton v. Ocwen Loan Servicing, LLC.* 2013 WL 5781324 (D. Minn. 2013)*; See also Donnelly-Tovar v. Select Portfolio Servicing, Inc.* 945 F. Supp. 2d 1037 (D. Neb. 2013) (Offers to sell liens that survived a bankruptcy discharge was nothing more than a transparent effort to collect a discharged debt because they were "at best confusing to an unsophisticated consumer and at worst an intentionally misleading attempt to induce unsuspecting consumers into paying money on nonexistent debts.")  Thus, the "disclaimer defense" – or whether the disclaimer created confusion and thereby violated law -- will also be a common issue between the class. *See, e.g. Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644, 653 (M.D. Fla. 2015) (holding that while some affirmative defenses may create individual issues for some class members, "the common

issues of whether [defendant] is subject to the FDCPA and whether its actions violated the FDCPA predominate.").

Accordingly, both the claims and defenses involved here present predominating common questions which can be resolved for all class members in satisfaction of the predominance prong of Rule 23(b).

### 2.    Superiority

"[W]hen common issues predominate over individual issues, a class action lawsuit becomes more desirable as a vehicle for adjudicating the plaintiffs' claims." *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 698 (S.D. Fla. 2010) (citing *Klay v. Humana*, 382 F.3d 1241, 1269 (11th Cir. 2004)). Moreover, "[c]ourts are generally reluctant to deny class certification based on speculative problems with case management." *Klay*, 382 F.3d at 1273.

A class action in this case is superior to other available methods for the fair and efficient adjudication of the controversy because a class resolution of the issues described above outweighs the difficulties in management of hundreds of separate and individual claims, and allows access to the courts for those who might not gain such access standing alone. Class certification is particularly appropriate in light of the relatively small amount of the actual and statutory damage claims at issue.

In numerous cases, courts have recognized that Rule 23(b)(3) certification is particularly appropriate for consumer claims such as those asserted here. See, e.g., *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004) ("Representative actions … appear to be fundamental to the statutory structure of the FDCPA."); See also, e.g., *Amchem*, 521 U.S. at 617 ("The policy of the very core of the class action mechanism is to overcome the problem that

small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

The Class here is generally limited to the recovery of statutory damages of up to $1,000 per person, which is small considering that the offending letter is on the letterhead of a defendant which has asserted it is not even regulated under the FDCPA.  15 U.S.C. § 1692k(a).  This relatively modest recovery for statutory violation is not a huge incentive to bringing individual actions.  Importantly, the FDCPA also limits statutory damages in class actions such as this case to "the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k(a)(2)(B).  Here, the Defendant's net worth is indisputably large enough so as to call the $500,000 cap into play which will render the recovery per class member smaller, but not so small as to destroy the superiority element.  See *Hicks v. Client Services, Inc.*, 257 F.R.D. 699, 700 (S.D.Fla.,2009)(De minimus recovery of $1.24 did not destroy superiority).  Indeed, the fact that the vast majority of class member are completely unaware that Rushmore's practices may be in violation of the FDCPA and the FCCPA.

Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented.  *Eovaldi v. First Nat'l Bank*, 57 F.R.D. 545 (N.D.ILL.1972).  The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy.  *Scholes, supra*, 143 F.R.D. at 189; *Hurwitz v. R.B. Jones Corp.*, 76 F.R.D. 149 (W.D. Mo. 1977).  It is proper for a court, in deciding the "best" available method, to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc., supra.*

17

In this case, there is no better method available for the adjudication of the claims which might be brought by each individual debtor subjected to Defendant's practice. *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397 (D.N.J. 1990). Class actions are a more efficient and consistent means of trying the legality of a form letter. *Labbate-D'Alauro v. GC Services Ltd. Partnership*, 1996 WL 563376 (E.D.N.Y. 1996); *Villareal v. Snow*, 1996 WL 28254 (N.D.Ill.1996); *Gammon v. GC Services Ltd. Partnership*, 162 F.R.D. 313 (N.D.ILL. 1995). As one Court has explained, FDCPA class actions are not only certifiable, but are needed:

> We do not assume that class members understand the provisions [of the FDCPA] well enough to know that it may be financially worthwhile to spend the time and effort to litigate these matters. Also, the number of potential class members makes concentration of these claims desirable. We also note that decertifying this class would (theoretically) create a perverse incentive for debt collectors using unfair practices to use them as widely as possible, in order to prevent a class action from being certified.

*Hicks v. Client Services, Inc.*, 257 F.R.D. 699, 700 (S.D.Fla. 2009).

Another court has also noted:

> Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller, and Kane have discussed in analyzing consumer protection class actions such as the instant one, "typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated." 7B Wright et al., § 1778, at 59; see, e.g., *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (" "Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.''). The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in class action form.

*Lake v. First Nationwide Bank*, 156 F.R.D. 615 at 628, 629 (E.D.Pa. 1994). Similarly, this case, brought on behalf of financially-distressed homeowners, involves relatively small

amounts but requires an enormous financial burden to pursue making the case completely uneconomical to pursue unless class certification is granted.   Moreover, such a certification permits individual claimants to opt-out and pursue their own actions separately if they believe they can recover more in an individual suit.   Therefore, superiority pursuant to Rule 23(b)(3) is also established.

## III.     CONCLUSION

Therefore, Plaintiff respectfully prays that the Court certify the Class set forth above against Defendant, appoint her as representative and her attorneys as counsel for the Classes.

Dated: July 8, 2016.                         **VARNELL & WARWICK, P.A.**

By:     /s/ Janet R. Varnell
        Janet R. Varnell
        Florida Bar No.:  0071072
        Brian W. Warwick
        Florida Bar No.:  0605573
        Steven T. Simmons, Jr.
        Florida Bar No.:  0091654
        P.O. Box 1870
        Lady Lake, FL  32158
        Telephone: (352) 753-8600
        Facsimile:  (352) 504-3301
        jvarnell@varnellandwarwick.com
        bwarwick@varnellandwarwick.com
        ssimmons@varnellandwarwick.com
        kstroly@varnellandwarwick.com

        **MAX STORY, P.A.**
        Max Story
        Florida Bar No: 527238
        328 2nd Avenue North, Suite 100
        Jacksonville Beach, FL  32250
        Telephone:  (904) 372-4109
        Facsimile:  (904) 758-5333
        max@maxstorylaw.com

        Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of July, 2016, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record identified below via transmission of Notices of Electronic Filing generated by CM/ECF:

JUSTIN WONG
TROUTMAN SANDERS, LLP
600 Peachtree Street, N.E.
Suite 5200
Atlanta, GA  30308
Telephone:  (404) 885-3974
Facsimile:  (404) 885-3900
*justin.wong@troutmansanders.com*

Attorneys for Defendant
RUSHMORE LOAN MANAGEMENT SERVICES, LLC


/s/ Janet R. Varnell
Janet R. Varnell