# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

RANDOLPH SELLERS, individually
and on behalf of a class of persons
similarly situated and TABETHA
SELLERS, individually and on behalf
of a class of persons similarly situated,

      Plaintiffs,

v.                                       Case No. 3:15-cv-1106-J-32PDB

RUSHMORE LOAN MANAGEMENT
SERVICES, LLC,

      Defendant.

_____

# O R D E R

    This consumer credit putative class action is before the Court on: (1) Defendant Rushmore Loan Management Services, LLC's Motion for Summary Judgment (Doc. 33), to which Plaintiffs Randolph and Tabetha Sellers responded (Doc. 37); and (2) Plaintiffs' Motion for Class Certification (Doc. 28), to which Rushmore responded (Doc. 31). On March 30, 2017, the Court held a hearing on the motion for summary judgment, the record of which is incorporated herein.[1] (Doc. 53).

---

    [1] At the hearing, the parties discussed issues pertaining to summary judgment and class certification, so the Court finds it appropriate to address both motions at this time.

    Because neither party requested the official transcript of the hearing, the Court has relied on a "rough" transcript.

# I.    BACKGROUND

In April 2007, Plaintiffs borrowed $122,459 from Premier Mortgage Funding, Inc. for a loan on their home in Keystone Heights, Florida. (Doc. 33-2). The loan was evidenced by a promissory note and secured by a mortgage on the property. (Id.). The loan went into default, and in September 2008, Taylor, Bean & Whitaker and GMAT Legal Title Trust 2013-1, the holders of the mortgage and note, filed a foreclosure action. (Doc. 37-1 ¶ 6). Plaintiffs moved out of the property and into Ms. Sellers's mother's residence. (Id. ¶ 7). On February 16, 2011, Plaintiffs filed a voluntary Chapter 7 bankruptcy petition, which triggered a stay of the foreclosure action.[2] (Id. ¶ 9). Plaintiffs state that they did not reaffirm the debt due to the continuously increasing balance on the loan. (Id. ¶ 11). On June 2, 2011, Plaintiffs received a Chapter 7 discharge, which released them from personal liability for the loan on their home. (Doc. 33-3). Under the discharge order,

> a creditor is not permitted to contact a debtor by mail, phone, or otherwise . . . or to take any other action to collect a discharged debt. . . . However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtors' property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case.

(Id. at 4).

In August 2013, servicing of Plaintiffs' loan transferred from Bank of America to Rushmore. (Doc. 33-1 ¶ 5). Beginning in February 2014, Rushmore sent three

---

[2] Plaintiffs' bankruptcy case is In re Randolph Lane Sellers and Tabetha Lynne Sellers, Case No. 3:11-bk-911 (Bankr. M.D. Fla).

written forms to Plaintiffs: Mortgage Statement I, Mortgage Statement II, and a Request for Taxpayer Identification Number ("Request for TIN").

First, from February 2014 through November 2014, on the first of each month, Rushmore sent Plaintiffs a copy of Mortgage Statement I.[3] Page one lists a "Payment Due Date" and an "Amount Due" in a box in the top right corner. Located directly beneath that box in a separate box is a disclaimer:

> This communication is from a debt collector and any information received will be used for that purpose. This does not imply that Rushmore Loan Management Services is attempting to collect money from anyone whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States; in such instances, it is intended solely for informational purposes.

Below the disclaimer box is another box entitled "Explanation of Amount Due," which itemizes the principal, interest, escrow, regular monthly payment, total fees and charges, and overdue payment on the loan. At the bottom of page one is a detachable payment coupon, which lists a "Due Date," "Amount Due," a "Late Payment Amount" and instructions to make checks payable to Rushmore.

---

[3] Plaintiffs state that they received ten copies of Mortgage Statement I—one copy per month from February 2014 through November 2014. (Doc. 37 at 18).

Several statements are attached to the motion for class certification but not the response to the motion for summary judgment: March 2014 (Doc. 28-1 at 19-23); April 2014 (Id. at 124-28; May 2014 (Id. at 119-123); June 2014 (Id. at 115-18); July 2014 (Id. at 111-14); and August 2014 (Id. at 107-110).

Plaintiffs attached the statements they received from September 2014 through November 2014 to their response in opposition to the motion for summary judgment. (Doc. 37-1 at 8-20).

The Court cannot locate a copy of the February 2014 statement.

Next, beginning in December 2014 and through June 2015, on the first of each month, Rushmore sent Plaintiffs a new form of the mortgage statement.[4] Mortgage Statement II contains the same box at the top right corner listing a "Payment Due Date," "Amount Due," and a sentence informing the recipient that if payment is received after a certain date, a late fee will be charged. Directly below that box are two separate boxes, one showing the same disclaimer language as in Mortgage Statement I, and the "Explanation of Amount Due" information. However, Mortgage Statement II eliminates the payment coupon and replaces it with the following additional disclaimer language in a box at the bottom of page one:

> This is an Information Statement for borrowers in bankruptcy or borrowers whose debt has been discharged in bankruptcy. It is not an attempt to collect a debt. Please note that even if your debt has been discharged in bankruptcy and you are no longer personally liable on the debt, the lender may, in accordance with applicable law, pursue its rights to foreclose on the property securing the debt. If you do not wish to receive informational statements in the future, please call Rushmore toll-free at (888) 504-6700.

The bottom of the last page also contains disclaimer language:

> Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

_____

[4] Plaintiffs state that they received seven copies of Mortgage Statement II—one copy per month from December 2014 through June 2015. (Doc. 37 ¶ 17; Doc. 37-1 at 21-30, Doc. 37-2; Doc. 28-1 at 92-96).

Finally, on March 5, 2014, Rushmore sent Plaintiffs a packet of information which, among other information, included a Request for TIN.[5] The first page of the packet notes that "We have enclosed important information regarding your loan." The document does not specify the amount of Plaintiffs' loan, list a due date, request payment, or provide a method to do so. At the top of the Request for TIN, under the Privacy Act Statement heading, the document states:

> Section 6109 of the Internal Revenue Code requires you to give your correct [TIN] to persons who must file information returns with the IRS to report interest, dividends and certain other income paid to you, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt or contributions you made to an IRA.

Upon receiving the monthly mortgage statements, Ms. Sellers called Rushmore to confirm that it had a copy of Plaintiffs' bankruptcy discharge order. (Doc. 37-3 at 46:23-47:4). During a call to Rushmore, she states that she "was then talked to about a deed in lieu [of foreclosure]." (Id. at 48:1-2). Ultimately, in May 2014, Plaintiffs declined Rushmore's offer to accept a deed in lieu of foreclosure. (Id. at 63:5-64:4). The state court entered a final judgment of foreclosure on August 28, 2014, (Doc. 37 at 5), and the property was sold at a foreclosure sale on October 4, 2014 (Doc. 33-5). Due to a clerical error, the sale proceeds were initially made payable to an incorrect party (Doc. 33-6), but were properly distributed in April 2015. (Doc. 33-7). Nevertheless,

---

[5] Plaintiffs state that they received one copy of the Request for TIN in March 2014. (Doc. 37 at 18). Plaintiffs only attached the one-page Request for TIN to the complaint. (Doc. 1-2 at 23). Rushmore, however, attached the entire letter and the Request for TIN to its motion for summary judgment (Doc. 33-10), which provides a more complete picture of what Plaintiffs received in the mail. Therefore, the Court will refer to Doc. 33-10 in its analysis of this form.

Plaintiffs continued receiving a monthly communication containing Mortgage Statement II through June 2015. (Doc. 37 at 5).

Plaintiffs filed this putative class action, raising four claims. (Doc. 1). Count I alleges that Rushmore violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), by sending monthly account statements which "attempted to collect a debt and represented that it had a legal right to collect upon discharged monetary amounts." (Id. ¶¶ 32-51). Plaintiffs allege that this conduct violates § 1692e, which prohibits the use of false, deceptive, or misleading representations in connection with the collection of a debt, and § 1692e(2)(A), because the collection activities falsely represented the character, amount or legal status of a debt. (Id. ¶¶ 46-47). Count II alleges that Rushmore violated the Florida Consumer Collection Practices Act, Fla. Stat. §§ 559.55-559.785 ("FCCPA"), by sending the monthly account statements because, in doing so, Rushmore "claim[ed] and attempt[ed] to enforce a debt which was not legitimate and not due and owing" in violation of § 559.72(9). (Id. ¶¶ 52-69). Count III alleges that Rushmore violated the FCCPA by sending the Request for TIN. (Id. ¶¶ 70-86). Specifically, Plaintiffs allege that Rushmore violated § 559.72(9), because it had "no legal right to seek collection of these amounts . . . and was in fact enjoined from doing so pursuant to bankruptcy discharge of the subject amounts." (Id. ¶ 83). In addition, Rushmore allegedly violated § 559.72(7) because Rushmore's "IRS threat is reasonably expected to abuse or harass the recipient." (Id. ¶ 84). Finally, in Count IV, Plaintiffs seek a declaration that Rushmore's conduct was unlawful, an injunction prohibiting Rushmore from sending documents requesting payment on discharged

debts, and an order requiring Rushmore to "disgorge all ill-gotten gains" under the Declaratory Judgment Act, 28 U.S.C. § 2201. (Id. ¶¶ 87-106). Plaintiffs have also filed a motion for class certification (Doc. 28), which Rushmore opposes (Doc. 31).

## II.    STANDARD OF REVIEW

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that establish the absence of any genuine material, factual dispute." Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003) (internal quotations omitted). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

In determining whether summary judgment is appropriate, a court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005). However, "Rule 56 mandates the entry of summary judgment, upon motion, against a party who fails to make a showing sufficient to establish an element essential to his case on which he bears the burden of proof at trial." Schechter v. Ga. State Univ., 341 F. App'x 560, 562 (11th Cir. 2009) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

## III.   APPLICABLE LAW

### A.   FDCPA

The FDCPA provides a civil cause of action against any debt collector who fails to comply with its requirements. See Bacelli v. MFP, Inc., 729 F. Supp. 2d 1328, 1331-32 (M.D. Fla. 2010) (citations omitted). The FDCPA prohibits debt collectors from using any false representation as to the "legal status of any debt." 15 U.S.C. § 1692e(2)(A). "A demand for immediate payment while a debtor is in bankruptcy (or after the debt's discharge) is 'false' in the sense that it asserts that money is due, although, because of . . . the discharge injunction (11 U.S.C. § 524), it is not." Bacelli, 729 F. Supp. 2d at 1331-32 (quoting Randolph v. IMBS, Inc., 368 F.3d 726, 728 (7th Cir. 2004) (dicta); see also Ross v. RJM Acquisitions Funding LLC, 480 F.3d 493, 495 (7th Cir. 2007) ("Dunning people for their discharged debts" is prohibited by 15 U.S.C. § 1692e(2)(A)); cf. Turner v. J.V.D.B. & Assocs., Inc., 330 F.3d 991, 995 (7th Cir. 2003) (reversing summary judgment in favor of debt collector on claim under § 1692e(2)(A) in part because a reasonable jury could conclude debt collector's collection letter implied that the discharged debt was still payable)).

In determining whether a debt collector's communication violates § 1692e, courts in the Eleventh Circuit employ the "least-sophisticated consumer" standard. See LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1193, 1201 (11th Cir. 2010). The "least sophisticated consumer" is "presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." Id. However, the test is an "objective" one, designed both to protect naïve consumers and prevent "liability for bizarre or idiosyncratic interpretations of

collection notices." See id. However, "it is not necessary for a plaintiff to show that she herself was confused by the communication she received; it is sufficient for a plaintiff to demonstrate that the least sophisticated consumer would be confused." Beeders v. Gulf Coast Collection Bureau, Inc., No. 809-CV-00458-EAK-AEP, 2010 WL 2696404, at *3 (M.D. Fla. July 6, 2010), aff'd, 432 F. App'x 918 (11th Cir. 2011) (quoting Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 91 (2d Cir. 2008)). "Additionally, the Court need not determine whether the named plaintiff or other putative plaintiffs read or were confused by the notice, as the standard is whether the least sophisticated consumer would have been misled." Battle v. Gladstone Law Grp., P.A., 951 F. Supp. 2d 1310, 1315 (S.D. Fla. 2013) (citation omitted).

**B.    FCCPA**

The FCCPA provides that a debtor may bring a civil action against any person who violates its provisions. Fla. Stat. § 559.77. The FCCPA prohibits any person, in collecting consumer debts, from "claim[ing], attempt[ing], or threaten[ing] to enforce a debt when such person knows that the debt is not legitimate or assert[ing] the existence of some other legal right when such person knows that the right does not exist." Id. § 559.72(9) (alteration added). "In contrast to the FDCPA, § 559.72(9) of the FCCPA requires a plaintiff to demonstrate that the debt collector defendant possessed actual knowledge that the threatened means of enforcing the debt was unavailable." LeBlanc, 601 F.3d at 1192 (citing McCorriston v. L.W.T., Inc., 536 F. Supp. 2d 1268, 1279 (M.D. Fla. 2008) (internal citations omitted)). The FCCPA also prohibits "willfully engag[ing] in . . . conduct which can reasonably be expected to abuse or harass the debtor. . . ." Fla. Stat. § 559.72(7). Finally, the FCCPA provides that in

construing its provisions, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the [FDCPA]." Fla. Stat. § 559.77(5); <u>Herrera v. Bank of Am., N.A.</u>, No. 15-CV-62156, 2016 WL 4542105, at *9 (S.D. Fla. Aug. 31, 2016).

## IV.    ANALYSIS

### A.    Motion for Summary Judgment

#### 1.    **Whether the Communications Violate the FDCPA and/or FCCPA**

##### a.    *Mortgage Statement I*[6]

###### i.    FDCPA

Plaintiffs argue that Mortgage Statement I violates § 1692e(2)(A) in that it "misrepresent[s] the character, amount, or legal status of the demands for the TOTAL AMOUNT DUE on its statements," and that the least sophisticated consumer could conclude that Rushmore was asserting that she was personally liable for the total amount due. (Doc. 37 at 16-17). Specifically, Plaintiffs identify demands for payment on the first page of the statement, including "Current Payment Due," "Other Amounts Due," and in bold letters and all capitals, "TOTAL AMOUNT DUE."[7] (<u>Id.</u> at 16). They

---

[6] The FDCPA's statute of limitations is one year. 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs."). Plaintiffs filed suit on September 11, 2015. For purposes of the FDCPA, only those communications sent after September 11, 2014 may be considered a violation of the FDCPA. Therefore, only the October and November 2014 Mortgage Statement Is are actionable under the FDCPA. Plaintiffs conceded this point at oral argument.

[7] Plaintiffs slightly misrepresent the exact language that appears on the front page of Mortgage Statement I. The words on the document include, among others: in

10

also quote the language in the "Important Information" box, which says, "IF YOU ARE [IN] FORECLOSURE OR BANKRUPTCY, the amount listed here may not be the full amount necessary to bring your account current. To obtain the most up-to-date amount due information, please contact us at the number listed on this statement." (Id.; Doc. 33-8 at 2). According to Plaintiffs, this language undercuts the disclaimers upon which Rushmore relies. Plaintiffs also note the existence of the payment coupon "prominently featured" in Mortgage Statement I. (Doc. 37 at 18). Because they believe that a genuine issue of material fact exists as to whether Mortgage Statement I was "deceptive, confusing, and abusive" to the least sophisticated consumer, Plaintiffs request that the Court deny summary judgment.

Rushmore argues that Mortgage Statement I is for informational purposes and does not seek to induce payment from Plaintiffs, noting the disclaimer at the top right corner of the first page; thus, Rushmore argues, it is not subject to the FDCPA. (Doc. 33 at 15). Moreover, given that creditors are permitted to communicate with debtors regarding security liens on property even after a discharge in bankruptcy, Rushmore argues that it was clear that the statement was not sent to induce payment of a debt. (Id. at 18).

The FDCPA does not apply to every communication between a debt collector and a debtor. "[F]or a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor."

---

bold letters, "Amount Due," "Total Amount Due," and in bold, capital letters "DUE DATE," "AMOUNT DUE," and "LATE PYMT AMOUNT."

Parker v. Midland Credit Mgmt., Inc., 874 F. Supp. 2d 1353, 1357 (M.D. Fla. 2012) (quoting Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 173 (6th Cir. 2011)). "Obviously, communications that expressly demand payment will almost certainly have this purpose." Id. (quoting Grden, 643 F.3d at 173). However, "an implicit demand for payment may exist where the letter states the amount of the debt, describes how the debt may be paid, provides the phone number and address to send payment, and expressly states that the letter is for the purpose of collecting debt." Leahy-Fernandez v. Bayview Loan Servicing, LLC, 159 F. Supp. 3d 1294, 1303 (M.D. Fla. 2016) (quoting Pinson v. Albertelli Law Partners LLC, 618 F. App'x. 551, 553 (11th Cir. 2015)). "On the opposite end of the spectrum, where a communication is 'merely information' and explicitly informs the debtor that the communication or notice is not an attempt to collect a debt or a demand for payment, courts have held that these communications are not subject to the FDCPA." Prindle v. Carrington Mort. Servs., LLC, Case No. 3:13-cv-1349-MMH-PDB, 2016 WL 4369424, at *6 (M.D. Fla. Aug. 16, 2016) (citing Hasbun v. Recontrust Co., 508 F. App'x. 941, 942 (11th Cir. 2013); Hernandez v. Dyck–O'Neal, Inc., No. 3:14–cv–1124–J–32JBT, 2015 WL 2094263, at *3 (M.D. Fla. May 5, 2015); Parker, 874 F. Supp. 2d at 1358).

As the Eleventh Circuit has not identified a specific test for determining whether a particular communication is made in connection with the collection of a debt such that it falls within the ambit of the FDCPA, many courts in this Circuit look to out-of-circuit decisions for guidance. See Prindle, 2016 WL 4369424, at *6 (citing Parker, 874 F. Supp. 2d at 1356). For instance, the Sixth and Seventh Circuits have

identified "the relationship of the parties, the intent of the communication, as well as whether there was a demand for payment as factors to consider when determining whether a communication falls within the scope of the FDCPA." Parker, 874 F. Supp. 2d at 1356-57. "Other factors courts have considered include whether the communication was sent in response to an inquiry or request by the debtor; whether it was from a debt collector; whether it stated that it was an attempt to collect a debt; and whether the communication threatened consequences if the debtor failed to pay." Prindle, 2016 WL 4369424, at *6 (citing Bohringer v. Bayview Loan Servicing, 141 F. Supp. 3d 1229, 1240-41 (S.D. Fla. 2015)).

Rushmore is not entitled to summary judgment because a genuine dispute exists as to whether Mortgage Statement I was an attempt to collect a debt. In terms of the relationship between the parties, Rushmore was the servicer of Plaintiffs' discharged loan and is undisputedly a debt collector. (See Doc. 33-10) ("This communication is from a debt collector. . . ."). Similar to certain elements of a mortgage statement in Prindle, Mortgage Statement I lists amounts due, the dates they are due, provides a means of payment via the detachable payment coupon, and a late payment amount, which could be read to imply a financial penalty for failure to timely pay the amount due. Further, Plaintiffs did not request that Rushmore send them this information. To the contrary, the evidence shows that Plaintiffs did not expect to receive any further communications about the loan—much less what arguably resembles a request for payment—following the discharge. See, e.g., Doc. 33-4 97:4-11 ("I [Ms. Sellers] felt like once we were discharged from the bankruptcy that legally we

13

should not be contacted by another collector . . . ."). While the disclaimer is located on the front of the mortgage statement (as opposed to the second page, as in Prindle), when considered in conjunction with the other aspects of the statement described here, "a reasonable jury could find it to be a communication made in connection with the collection of a debt."[8] Prindle, 2016 WL 4369424, at *15 (citing Goodin v. Bank of Am., N.A., 114 F. Supp. 3d 1197, 1206 & n.10 (M.D. Fla. 2015) (finding "statements that contained payment instructions, a payment due date, and an amount due" were attempts to collect a debt, even though they also were labeled "FOR INFORMATION PURPOSES" and stated that if debtors were currently in bankruptcy, statement should not be construed as an attempt to collect from them personally)); see also

---

[8] Rushmore relies heavily on Helman v. Udren Law Offices, P.C., 85 F. Supp. 3d 1319 (S.D. Fla. 2014), a decision in which the court found that a mortgage statement containing a payment coupon and a disclaimer on the second page did not constitute an attempt to collect a debt. Though this Court respects the teaching of Helman, it is not bound to follow it. Moreover, while the statements in Helman had similar characteristics to Mortgage Statement I, the Court disagrees with Rushmore's argument that "Mortgage Statement I contains disclaimer language that is clearer and more definitive than the language in the mortgage statements at issue in Helman." (Doc. 33 at 19).

The Helman disclaimer language read: "This statement is sent for informational purposes only ***and is not intended as an attempt to collect, assess, or recover a discharged debt from you***. . . . If this account is active or has been discharged in a bankruptcy proceeding, be advised this communication is for informational purposes only and ***is not an attempt to collect upon a debt***." Helman, 85 F. Supp. 3d at 1327 (emphasis in original).

The Helman disclaimer notes that the statement is not attempting to collect a debt from accounts discharged in bankruptcy and is for informational purposes only, whereas Mortgage Statement I uses more ambiguous language that could confuse the least sophisticated consumer such as, "this does not imply that Rushmore . . . is attempting to collect money from anyone whose debt has been discharged pursuant to . . . the bankruptcy laws . . . ."

Leahy-Fernandez, 159 F. Supp. 3d at 1303 (mortgage statement which "(1) lists a total amount due, (2) provides a payment coupon that includes the address to which payment should be sent and the amount due, (3) discusses additional payment options, and (4) provides that a fee will be charged if payment is not received by a certain date" were attempts to collect a debt).

For similar reasons, a genuine issue of material fact exists as to whether Mortgage Statement I was false, deceptive, or misleading to the least sophisticated consumer. Rushmore contends that Plaintiffs' deposition testimony, in which they state that they understood that the statements were not attempts to collect a debt, undercuts their argument that the mortgage statement was misleading. See, e.g., Doc. 33-11 57:22-58:7 ("I [Mr. Sellers] understood that they weren't trying to collect a debt."). Although Plaintiffs admitted in their depositions that they understood that Rushmore was not trying to collect a debt,[9] the least sophisticated consumer standard

_____

[9] Ms. Sellers did express confusion as to why they were continuing to receive the mortgage statements when she understood the debt to have been discharged:

> Deciding to do a bankruptcy was not an easy decision for us. It wasn't easy to know that we were going to have to do this. So once we decided to do that and we got discharged, we honestly thought it's going to take, we're going to have to start over, but we can do it.

> We can rebuild our credit. And that's what we have been doing since we were discharged, was trying to rebuild our credit and trying to have a fresh start from all of this. And it's been a lot of years between each mortgage company and then the bankruptcy, and then thinking that we've taken care of everything legally that we were supposed to take care of.

is objective and does not take into account the individual circumstances of a plaintiff. As such, given the contrasting conclusions a consumer might draw from the language requesting payment, the payment coupon, and the disclaimer, the Court cannot conclude as a matter of law that these statements were not misleading. See Prindle, 2016 WL 4369424, at *16 (quoting LeBlanc, 601 F.3d at 1197 ("[W]here the parties reasonably disagree on the proper inferences that can be drawn from the debt collector's [communication], resolution is for the trier of fact—not for the court on summary judgment.")).

### ii.    FCCPA

To avoid summary judgment on their claim that Mortgage Statement I violates § 559.72(9), Plaintiffs must prove that Rushmore "had actual knowledge that their claim of a right to enforce the debt was [invalid.]" Arianas v. LVNV Funding LLC, 132 F. Supp. 3d 1322, 1330 (M.D. Fla. 2015) (quoting McCorriston, 536 F. Supp. 2d at 1279). "To meet the requirements of § 559.72(9), a plaintiff must do more than merely show the defendant's claim is not legitimate; she must also show that the defendant *knows* the claim is not legitimate, a separate issue." Kelly v. Davis, No. 3:10CV392-MW/EMT, 2014 WL 12515345, at *10 (N.D. Fla. July 17, 2014) (emphasis in original).

---

> And then to start getting this, these statements every month, and seeing it just go up and up and up. And then with what I was being told on the phone by the Rushmore representative, I honestly thought, oh, my gosh, are we going to be even in a worse hole than we were before we filed the bankruptcy? That was my thought process.

(Doc. 33-4 59:2-24).

Neither party does an exceptional job supporting its assertions concerning the viability of the FCCPA claim. Instead, both parties conflate their arguments regarding the FDCPA claims with the FCCPA claims, primarily arguing in FDCPA terms whether the statements were false and misleading. Indeed, courts in this Circuit have dismissed similar claims on such grounds. See Pollock v. Bay Area Credit Serv., LLC, No. 08-61101-CIV, 2009 WL 2475167, at *9 (S.D. Fla. Aug. 13, 2009) ("The Court agrees that Plaintiff has conflated the FDCPA's requirements with the FCCPA's provisions, without demonstrating the basis for its legal theory. Therefore, this claim shall be dismissed.").

Despite these shortcomings, there is sufficient evidence in the record to deny summary judgment on the FCCPA claim. Courts have found that a defendant's knowledge of a plaintiff's bankruptcy proceeding is sufficient to allow an FCCPA claim to survive summary judgment in these circumstances. For instance, in Bacelli, the defendant argued that it could not be held liable under § 559.72(9) because "it lacked actual knowledge of the bankruptcy action." 729 F. Supp. 2d at 1338. However, the court ruled that the defendant's knowledge that the plaintiff had filed for bankruptcy constituted "substantial evidence that [the defendant] possessed the requisite knowledge" and denied summary judgment. Id. Here, Ms. Sellers testified that when she called Rushmore to confirm that it had the Sellers' bankruptcy on file, Rushmore "told [Ms. Sellers], [Rushmore] did, that . . . the bankruptcy was on file." (Doc. 33-4 73:2-25). Importantly, Rushmore does not dispute that it knew Plaintiffs' loan was discharged in bankruptcy. Given the compelling similarities between this case and

<u>Bacelli</u>, summary judgment on Plaintiffs' claim that Mortgage Statement I violated § 559.72(9) is due to be denied.

### b. *Mortgage Statement II*

Relying on many of the same arguments, Rushmore also requests summary judgment based on Plaintiffs' claims related to Mortgage Statement II. (Doc. 33 at 19). Rushmore emphasizes some differences between Mortgage Statements I and II which arguably strengthen its claim that the latter is not an attempt to collect a debt. For instance, while Mortgage Statement II contains the same disclaimer language on the top, right-hand corner of the first page, it eliminates the payment coupon and replaces it with additional, stronger disclaimer language. (<u>See</u> <u>supra</u>, p. 4). Of particular consequence are the statements in the additional disclaimer box, which state: "This is an Informational Statement for borrowers in bankruptcy or borrowers whose debt has been discharged in bankruptcy. It is not an attempt to collect a debt." (Doc. 33-9).

Plaintiffs' response does not meaningfully distinguish between the two forms of the mortgage statements, instead relying on the language that appears in both statements, which they argue is confusing to the least sophisticated consumer, who could conclude that Rushmore was asserting that she was personally liable for the amounts listed. (Doc. 37 at 17). Plaintiffs also note that neither Mortgage Statement I nor II includes language that "the amounts described as due are 'in lieu of enforcing a lien.'" (Doc. 37 at 17).

The disclaimer language in Mortgage Statement II is somewhat stronger, and the Court is mindful that the presence of the language "this is not an attempt to collect a debt" helped persuade this Court and others in debt collection disputes that the

contested documents are "clearly informational." See Hernandez, 2015 WL 2094263, at *3 ("The May 2 letter . . . expressly stated that it was not an attempt to collect a debt, whereas the letter in LeBlanc expressly stated that it was an attempt to collect a debt. . . . Accordingly, agreeing with the rationale of Parker, the Court determines as a matter of law that the May 2 letter was not an attempt to collect a debt." (emphasis added));[10] see also Parker, 874 F. Supp. 2d at 1358 ("And the purpose of the letter was to inform Plaintiff of the assignment of the account to Defendant. Indeed, the letter even states that 'this is not an attempt to collect a debt.'" (emphasis added)); Helman, 85 F. Supp. 3d at 1327. While disclaimer language is pertinent, it is not necessarily dispositive, and all the facts and circumstances surrounding the disclaimer must be considered. For example, indicators such as the timing and context of the document, the content of the document besides the disclaimer, the size of the disclaimer language type, its location on the document, and whether it is written in plain language should all be considered. In denying summary judgment here, the Court is simply stating that the jury, not the Court, should decide the import of the disclaimer language, along with all the other indicia.

Like Mortgage Statement I, Mortgage Statement II lists an Amount Due, Total Amount Due, as well as a notation that if payment is received after a certain date, a

---

[10] In Hernandez, the undersigned ruled that a letter with disclaimer language did not constitute an attempt to collect a debt. However, the Hernandez letter, which the defendant was required to send by a Florida statute, informed the plaintiff of the assignment of the loan and did not contain traditional payment language. Here, the mortgage statements did not transmit any such pertinent information to Plaintiffs and arguably looked like a customary payment request.

late fee would be charged. Such language is contrary to the notion that the statement was for informational purposes only. In addition, Plaintiffs received all seven copies of Mortgage Statement II <u>after</u> the final judgment of foreclosure had been entered and the property had been sold at a foreclosure sale. At that point, Plaintiffs had neither an in personam nor an in rem interest in the property, yet Rushmore continued sending monthly mortgage statements to them. At oral argument, Rushmore could not convincingly argue that it had any good reason to send Plaintiffs monthly statements following the foreclosure sale. Under these circumstances, the Court cannot find as a matter of law that Mortgage Statement II does not constitute an attempt to collect a debt.

Further, the inconsistencies between the disclaimer language and amounts due on Mortgage Statement II could mislead the least sophisticated consumer, even despite the lack of a payment coupon. Although the disclaimer states that the statement is "not an attempt to collect a debt," the specific amounts due, possible financial penalties, and instructions to contact Rushmore at the number listed on the statement to obtain "the most up-to-date amount due information" could confuse the least sophisticated consumer to the point that she thought she owed Rushmore a payment. Thus, a genuine issue of material fact exists as to whether Mortgage Statement II violates the FDCPA.

For the same reasons explained in connection with Mortgage Statement I, <u>see</u> <u>supra</u> Part IV.A.1.a.ii, Plaintiffs have demonstrated that Rushmore had actual knowledge that it violated § 559.72(9) as to Mortgage Statement II. Accordingly,

Rushmore's request for summary judgment as to Mortgage Statement II is due to be denied.

### c.    *Request for Taxpayer Identification Number*

The core of Plaintiffs' argument regarding the Request for TIN is that the least sophisticated consumer would fear the threat of action by either Rushmore or the IRS after receiving the document. (Doc. 1 ¶ 19; Doc. 33-10). As an initial matter, Count III alleges that the Request for TIN violates the FCCPA, not the FDCPA. While the two statutes are certainly similar in their design and objectives, "they are not identical." See Prescott v. Seterus, Inc., 194 F. Supp. 3d 1290, 1296 (S.D. Fla. 2016) ("Although the Florida law is modeled after its federal counterpart, 'the two statutes are not identical.'" (quoting Mandate of the United States Court of Appeals for the Eleventh Circuit at 10)); Beeders, 2010 WL 2696404, at *6 ("There are intentional differences between the FDCPA and FCCPA, and a violation of the federal statute does not automatically constitute a violation of the state statute in situations where the FCCPA is distinguishable."). Notwithstanding Plaintiffs' failure to plead an FDCPA violation in connection with the Request for TIN, the FDCPA's one-year statute of limitations would bar such a claim in any event. 15 U.S.C. § 1692k(d). As stated above, see supra n.6, for purposes of the FDCPA, only those communications sent after September 11, 2014 may be considered actionable under the FDCPA. Plaintiffs received the Request for TIN on March 5, 2014; therefore, the statute of limitations would bar an FDCPA claim. However, the claim is not time-barred under the FCCPA's two-year statute of limitations, so the Court will analyze whether the Request for TIN violated the FCCPA. See Harrington v. RoundPoint Mortg. Servicing Corp., 163 F. Supp. 3d 1240,

1245 (M.D. Fla. 2016) ("Under the FCCPA, a debtor must commence a civil action within two years after the date the alleged violation." (citing Fla. Stat. § 559.77(4))).

All of Plaintiffs' arguments regarding the Request for TIN concern possible FDCPA violations (Doc. 37 at 19-20), but fail to demonstrate that the document constitutes an attempt to collect a debt or that Rushmore had the requisite actual knowledge that it was invalidly trying to collect a debt. The Request for TIN does not discuss the underlying loan, state an amount due, list any deadlines for payment, or any other information related to the loan. Instead, the document requests Plaintiffs' taxpayer identification information so that Rushmore may meet its reporting obligations to the IRS. Under these circumstances, the Request for TIN does not constitute an attempt to collect a debt under the FCCPA.

While Plaintiffs correctly point out that in Kuehn v. Cadle Co., Inc., 335 F. App'x 827 (11th Cir. 2009), the court found a request for taxpayer identification number to violate the FDCPA as a matter of law, Kuehn is distinguishable. First, Kuehn involved the FDCPA, rather than the FCCPA, and is thus inapposite. Next, the court found that the request violated the FDCPA's prohibition against misleading statements used to collect a debt, particularly that "the threat that Kuehn would be subject to an IRS penalty for failure to furnish her TIN was a misleading statement that was used in an attempt to obtain her TIN." Id. at 831. Here, there was no such threat of an IRS penalty.

There is no genuine issue of material fact as to whether the Request for TIN constitutes an attempt to collect a debt under the FCCPA. Accordingly, Rushmore is entitled to summary judgment on Count III.

### 2. **Whether the Bankruptcy Code Precludes the FDCPA and/or Preempts the FCCPA**

Rushmore argues that Plaintiffs' FDCPA and FCCPA claims are precluded and preempted by the Bankruptcy Code because the claims are "based on the mistaken belief that Rushmore was prohibited from having any post-discharge communications with Plaintiff[s]." (Doc. 33 at 11). Rushmore relies on two recent rulings in Prindle v. Carrington Mortgage Services, LLC, Case No. 3:13-cv-1349-MMH-PDB (M.D. Fla.).[11]

"Section 524 of the Bankruptcy Code operates as a post-discharge injunction against the collection of debts discharged in bankruptcy and is thus the embodiment of the Code's fresh start concept." In re Nibbelink, 403 B.R. 113, 119 (Bankr. M.D. Fla. 2009) (citing Hardy v. U.S., 97 F.3d 1384, 1388-89 (11th Cir. 1996)). Section 524 provides in relevant part:

> (a) A discharge in a case under this title--
>
> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

---

[11] Rushmore cites the Transcript of Ruling on Motion to Dismiss, Sept. 25, 2015, Doc. 99 (hereinafter cited as "Prindle Transcript") (dismissing FCCPA claims as preempted by Bankruptcy Code); and the order on summary judgment, Prindle, 2016 WL 4369424, at *15 (finding FDCPA claims not precluded by Bankruptcy Code because plaintiff claimed statement itself was false and misleading, not that the mere fact of sending it violated the FDCPA).

> (2) operates as an injunction against the commencement or
> continuation of an action, the employment of process, or an
> act, to collect, recover or offset any such debt as a personal
> liability of the debtor, whether or not discharge of such debt
> is waived.

11 U.S.C. § 524(a). The provision is construed broadly to insulate a debtor from

personal liability and includes informal collection and judicial actions. See Matter of

Stoneking, 222 B.R. 650, 652 (Bankr. M.D. Fla. 1998). Section 524(a) was designed to

"ensure that once a debt is discharged, the debtor will not be pressured in any way to

repay it." Id. (citing H.R. Rep., No. 595, 95th Cong., 1st Sess. 364 (1977)).

However, the bankruptcy discharge extinguishes only a debtor's personal

liability. See Johnson v. Home State Bank, 501 U.S. 78, 83 (1991) (holding that while

the bankruptcy discharge extinguishes one "mode of enforcing a claim—namely, an

action against the debtor in personam," it leaves "intact another—namely, an action

against the debtor in rem"). A secured creditor's "right to foreclose on the mortgage

survives or passes through the bankruptcy" and remains enforceable under state law.

Id. at 83. "The discharge injunction does not prohibit every communication between a

creditor and debtor—only those designed to collect, recover or offset any such debt as

a personal liability of the debtor." In re Gill, 529 B.R. 31, 37 (Bankr. W.D.N.Y. 2015)

(internal quotations and citations omitted). As the Prindle court explained, § 524(j)[12]

---

[12] Section 524(j) provides that:

Subsection (a)(2) does not operate as an injunction against an act by a creditor
that is the holder of a secured claim, if--

(1) such creditor retains a security interest in real property that is the principal
residence of the debtor;

(2) such act is in the ordinary course of business between the creditor and the

"permits a creditor holding a security interest in real property that is the principal residence of the debtor to seek and collect periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien, even though the debt has been discharged." <u>Prindle</u> Tr. at 18.

Before the Court addresses whether the Bankruptcy Code precludes and/or preempts the FDCPA and FCCPA, it must tackle a threshold issue not present in <u>Prindle</u>: does the § 524(j) exception to the discharge injunction even apply here?[13]

After Plaintiffs defaulted on the loan and Taylor filed the 2008 foreclosure action, Plaintiffs moved into Ms. Sellers's mother's home rather than be evicted. (Doc. 37-1 at 3 ¶ 7). Thus, when Rushmore sent the mortgage statements beginning in 2014, the property was not Plaintiffs' principal residence and had not been for years. <u>Cf. Prindle</u> Tr. at 19 ("Thus, the communications from a lienholder seeking payment, <u>as long as the debtor continues to reside in the home</u>, is permissible under the Bankruptcy Code." (emphasis added)); <u>In re Lemieux</u>, 520 B.R. 361, 368-69 (Bankr. D. Mass. 2014) (finding the safe harbor provided by § 524(j) was unavailable to defendants where "[t]he . . . property had not been the [plaintiffs'] principal residence for over a year by the time [the defendants] sent the insurance mailing"); <u>In re</u>

_____

debtor; and

 (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien.

11 U.S.C. § 524(j).

 [13] Although both parties rely on <u>Prindle</u> in their arguments regarding preemption and preclusion, the parties in <u>Prindle</u> did not argue—and thus, the court did not address—the threshold question present in this case of whether the Bankruptcy Code's injunction exception, found in § 524(j), applies.

_Nordlund_, 494 B.R. 507, 521 (Bankr. E.D. Cal. 2011) ("Section 524(j) does not apply here because the property was not the debtors' principal residence when [the defendant] sent the notice, the letter, and the statements. The debtors had vacated the property on October 20, 2009, nearly one month prior to the November 15, 2009 debt validation notice.").

Moreover, the only options ever offered to Plaintiffs were either a deed in lieu of foreclosure or a short sale.[14] (See Doc. 37-1 at 3 ¶ 5). Plaintiffs did not pursue those options because they were unable to pay the deficiency which would result. (Id.). Neither party identifies any evidence that Taylor or Rushmore ever offered Plaintiffs options that would allow them to make periodic payments to avoid foreclosure and remain in the home—the logic behind § 524(j). See _Bibolotti v. Am. Home Mortg. Servicing, Inc._, No. 4:11-CV-472, 2013 WL 2147949, at *9 (E.D. Tex. May 15, 2013) ("Given the purposes of the discharge injunction, the exception provided in 11 U.S.C. § 524(j) makes sense only if the real property is the principal residence of the debtor at the time of the bankruptcy. The exception would allow a secured creditor to remain in contact with a debtor who was living in the real property as his principal residence, send communications in the regular course of business, and explore the possibility of the debtor retaining his principal residence—i.e., collecting payments in lieu of

---

[14] Bankruptcy courts construe deeds in lieu of foreclosure as a form of in rem relief. See _In re South Florida Sod, LLC_, Case No. 6:13-bk-08466 (Bankr. M.D. Fla. Nov. 19, 2013) ("The automatic stay is modified for the sole purpose of allowing Great Oak . . . to complete in rem relief . . . to have such other and further in rem relief as is just, including, but not limited to, accepting a deed in lieu of foreclosure from the Debtor.").

foreclosure. However, for the debtor who no longer uses the real property as his principal residence at the time of bankruptcy, even if [it] was his principal residence at the time he entered the loan agreement, <u>there is no need for the secured creditor to continue communicating with the debtor regarding retaining the property or negotiating some type of modification in the ordinary course of business between the creditor and debtor</u>." (emphasis added)).

Following the bankruptcy discharge, in 2013, Rushmore began servicing the loan and, some time in 2014, again asked whether Plaintiffs wished to pursue a deed in lieu of foreclosure. (Doc. 33-1 ¶¶ 6-7; Doc. 37-1 ¶ 15). In May 2014, Plaintiffs told Rushmore that they did not wish to do so. (<u>Id.</u> ¶ 7). The foreclosure action on Plaintiffs' property was automatically stayed pending bankruptcy (Doc. 37 at 3), but in May 2014, a notice was filed informing the court of the termination of the stay. The foreclosure action proceeded, and on August 28, 2014, the state court entered a final judgment of foreclosure. Nonetheless, Rushmore sent Plaintiffs post-discharge mortgage statements during the stay of the foreclosure action (February 2014 through April 2014), while the foreclosure case was active (May 2014 through August 2014), and after judgment of foreclosure was entered (September 2014 through June 2015), none of which offered to forego foreclosure or offered any other workout alternatives. (Doc. 37 at 12). In these circumstances, § 524(j) does not apply, and the Court need not reach the issue of whether the Bankruptcy Code precludes or preempts the FDCPA or the FCCPA.

**B.      Motion for Class Certification**

The Court has reviewed the briefs on Plaintiffs' motion for class certification and, although the motion was not the main subject of the March 30, 2017 hearing, heard limited oral argument from both parties on the scope of the proposed class. The motion for class certification is a bit of a mess; it contains errors, cites exhibits not in the record, and certain sections lack citations to Eleventh Circuit authority. (See Doc. 28 at 13). Plaintiffs' proposed class definition has also "evolved" with the litigation.[15] For instance, the Account Statement Class in the Complaint encompasses:

> All Florida consumers who were sent an Account Statement by RUSHMORE in substantially the form of composite Exhibit B after receiving a Chapter 7 bankruptcy discharge of the mortgage debt at issue in the Account Statement.

(Doc. 1 at 5). The proposed class in the motion for class certification is defined as:

> All Florida consumers who: (a) had or have a residential mortgage loan that was acquired by RUSHMORE and/or transferred to RUSHMORE for servicing when in default; (b) received a Chapter 7 bankruptcy discharge of their mortgage debt; and (c) were sent an "Account Statement," in substantially the same form as those attached as Exhibit B to the Complaint, from RUSHMORE during the respective applicable statute of limitations.[16]

---

[15] Plaintiffs assert in the response in opposition to summary judgment that they are proceeding on the Request for TIN claim (Count III) solely on an individual, not class, basis. (Doc. 37 at 19). Consistent with this development, the motion for class certification does not include the IRS Form Class proposed in the Complaint.

[16] This proposed class definition implies that Plaintiffs are only seeking class certification for those debtors who received Mortgage Statement I, because Exhibit B contains only forms resembling Mortgage Statement I. (Doc. 1-2 at 4-21). However, the motion also states that the proposed class received mortgage statements in the form of Exhibit E to the Complaint. (Doc. 28 at 6). The Court cannot locate an Exhibit E of the Complaint; the Complaint apparently only contains Exhibits A-C. (Doc. 1-2). Thus, presuming whatever might be in Exhibit E contains statements in the form of Mortgage Statement II, it is unclear whether Plaintiffs intend to move for certification

(Doc. 28 at 6). Finally, at oral argument, Plaintiffs set forth another version of the class:

> People who file Chapter 7 bankruptcy who listed their home as being . . . didn't reaffirm their home, and post discharge, not post filing bankruptcy but post discharge received monthly billing statements in the form of a . . . mortgage statement number one and mortgage statement two during the two years prior to filing the complaint.[17]

(Motion for Summary Judgment Hearing Rough Tr., Doc. 53 at 39-40).

At oral argument, Rushmore argued that Plaintiffs have "narrowed" the proposed class. While the Court will not hold Plaintiffs to a definition proposed spontaneously at oral argument, these three iterations reflect that the class definition has morphed to such a degree that it would not be fruitful for the Court to substantively address Plaintiffs' motion at this time. Therefore, the motion for class certification will be denied without prejudice.

Accordingly, it is hereby

**ORDERED:**

---

of a class of Chapter 7 debtors who received Mortgage Statement I only, or both forms of the statement.

[17] While it is true that Plaintiffs did not reaffirm the mortgage debt in their bankruptcy filing, the Court questions whether this is the correct framework for a class in this case. In their Chapter 7 Individual Debtor's Statement of Intention, Plaintiffs checked that they would "surrender" their real property. See In re Sellers, Case No. 3:11-bk-911-PMG, Doc. 1 at 34 (Bankr. M.D. Fla. Feb. 15, 2011). According to the Statement of Intention, a debtor is not required to state whether she will reaffirm the debt when she checks the "surrender" option. Instead, only if a debtor wishes to "retain" the property is she required to state her intentions regarding redeeming the property, reaffirming the debt, or some other action. Therefore, the Court questions whether Plaintiffs, who intended to surrender the property, would be viable representatives of a class that affirmatively decided not to reaffirm the debt in connection with checking the option of retaining the property.

1.     Defendant Rushmore Loan Management Services, LLC's Motion for Summary Judgment (Doc. 33) is **GRANTED** as to Count III; the motion is otherwise **DENIED**.

2.     Plaintiffs' Motion for Class Certification (Doc. 28) is **DENIED without prejudice**. If Plaintiffs choose to file an amended motion for class certification, they must do so by **June 1, 2017**. Rushmore shall file its response by **June 30, 2017**.[18]

**DONE AND ORDERED** in Jacksonville, Florida the 3rd day of May, 2017.

TIMOTHY J. CORRIGAN
United States District Judge

sj
Copies:

Counsel of record

---

[18] Should Plaintiffs decide to file an amended motion for class certification, given that the parties have now had a preview of the opposition's arguments, both parties are encouraged to consider and address those arguments (to the extent appropriate) in their renewed motions and responses.