## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

RANDOLPH AND TABETHA
SELLERS, individually and on behalf of a
class of persons similarly situated,

      Plaintiffs,                            Case No.: 3:15-cv-1106-TJC-PDB

vs.

RUSHMORE LOAN MANAGEMENT
SERVICES, LLC,

      Defendant.

_____

### PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW

      Randolph and Tabatha Sellers ("Plaintiffs") file this renewed motion for certification of this class action on behalf of themselves and all others similarly situated, to secure redress for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 *et seq.* and the Declaratory Judgment Act, 28 U.S.C. § 2201.  Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs request an order certifying the Class as defined herein.

## I.    BACKGROUND[1]

      In April 2007, Plaintiffs borrowed $122,459 from Premier Mortgage Funding, Inc. for a loan on their home in Keystone Heights, Florida. (Doc. 33-2). The loan was evidenced by a promissory note and secured by a mortgage on the property. (Id.). The loan went into default, and in September 2008, Taylor, Bean & Whitaker and GMAT Legal Title Trust 2013-1, the

---

[1] Plaintiffs have attempted to mirror the facts as determined by this Court in its Summary Judgment Order to the extent possible to create a consistent record of the facts at issue.

holders of the mortgage and note, filed a foreclosure action. (Doc. 37-1 ¶ 6). Plaintiffs moved out of the property and into Ms. Sellers's mother's residence. (Id. ¶ 7). On February 16, 2011, Plaintiffs filed a voluntary Chapter 7 bankruptcy petition, which triggered a stay of the foreclosure action.[2] (Id. ¶ 9). Plaintiffs state that they did not reaffirm the debt due to the continuously increasing balance on the loan. (Id. ¶ 11). On June 2, 2011, Plaintiffs received a Chapter 7 discharge, which released them from personal liability for the loan on their home. (Doc. 33-3). Under the discharge order,

> a creditor is not permitted to contact a debtor by mail, phone, or otherwise . . . or to take any other action to collect a discharged debt. . . . However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtors' property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case.

(Id. at 4).

In August 2013, servicing of Plaintiffs' loan transferred from Bank of America to Rushmore. (Doc. 33-1 ¶ 5). Beginning in February 2014, Rushmore sent three written forms to Plaintiffs: Mortgage Statement I, Mortgage Statement II, and a Request for Taxpayer Identification Number ("Request for TIN").

First, from March 2014 through November 2014, on the first of each month, Rushmore sent Plaintiffs a copy of "Mortgage Statement I."[3] Page one lists a "Payment Due Date" and an "Amount Due" in a box in the top right corner. Located directly beneath that box in a separate box is a disclaimer:

> This communication is from a debt collector and any information received will be used for that purpose. This does not imply that

---

[2]  Plaintiffs' bankruptcy case is In re Randolph Lane Sellers and Tabetha Lynne Sellers, Case No. 3:11-bk-911 (Bankr. M.D. Fla).

[3]  Plaintiffs received nine copies of Mortgage Statement I — one copy per month from March 2014 through November 2014. (Composite Exhibit A)

> Rushmore Loan Management Services is attempting to collect money from anyone whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States; in such instances, it is intended solely for informational purposes.

Below the disclaimer box is another box entitled "Explanation of Amount Due," which itemizes the principal, interest, escrow, regular monthly payment, total fees and charges, and overdue payment on the loan. At the bottom of page one is a detachable payment coupon, which lists a "Due Date," "Amount Due," a "Late Payment Amount" and instructions to make checks payable to Rushmore.

Next, beginning in December 2014 and through June 2015, on the first of each month, Rushmore sent Plaintiffs a new form of the mortgage statement.[4]  "Mortgage Statement II" contains the same box at the top right corner listing a "Payment Due Date," "Amount Due," and a sentence informing the recipient that if payment is received after a certain date, a late fee will be charged. Directly below that box are two separate boxes, one showing the same disclaimer language as in Mortgage Statement I, and the "Explanation of Amount Due" information. However, Mortgage Statement II eliminates the payment coupon and replaces it with the following additional disclaimer language in a box at the bottom of page one:

> This is an Information Statement for borrowers in bankruptcy or borrowers whose debt has been discharged in bankruptcy. It is not an attempt to collect a debt. Please note that even if your debt has been discharged in bankruptcy and you are no longer personally liable on the debt, the lender may, in accordance with applicable law, pursue its rights to foreclose on the property securing the debt. If you do not wish to receive informational statements in the future, please call Rushmore toll-free at (888) 504-6700.

The bottom of the last page also contains disclaimer language:

---

[4] Plaintiffs received seven copies of Mortgage Statement II—one copy per month from December 2014 through June 2015. (Composite Exhibit B).

>Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

Upon receiving the monthly mortgage statements, Ms. Sellers called Rushmore to confirm that it had a copy of Plaintiffs' bankruptcy discharge order. (Doc. 37-3 at 46:23-47:4). During a call to Rushmore, she states that she "was then talked to about a deed in lieu [of foreclosure]." (Id. at 48:1-2). Ultimately, in May 2014, Plaintiffs declined Rushmore's offer to accept a deed in lieu of foreclosure. (Id. at 63:5-64:4). The state court entered a final judgment of foreclosure on August 28, 2014, (Doc. 37 at 5), and the property was sold at a foreclosure sale on October 4, 2014 (Doc. 33-5). Due to a clerical error, the sale proceeds were initially made payable to an incorrect party (Doc. 33-6), but were properly distributed in April 2015. (Doc. 33-7). Nevertheless, Plaintiffs continued receiving a monthly communication containing Mortgage Statement II through June 2015. (Doc. 37 at 5).

Plaintiffs filed this putative class action, raising four claims. (Doc. 1). Count I alleges that Rushmore violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), by sending monthly account statements which "attempted to collect a debt and represented that it had a legal right to collect upon discharged monetary amounts." (Id. ¶¶ 32-51). Plaintiffs allege that this conduct violates § 1692e, which prohibits the use of false, deceptive, or misleading representations in connection with the collection of a debt, and § 1692e(2)(A), because the collection activities falsely represented the character, amount or legal status of a debt. (Id. ¶¶ 46-47). Count II alleges that Rushmore violated the Florida Consumer Collection Practices Act, Fla.Stat. §§ 559.55-559.785 ("FCCPA"), by sending the monthly account statements because, in

doing so, Rushmore "claim[ed] and attempt[ed] to enforce a debt which was not legitimate and not due and owing" in violation of § 559.72(9). (Id. ¶¶ 52-69). Count III alleges that Rushmore violated the FCCPA by sending the Request for TIN. (Id. ¶¶ 70-86). Specifically, Plaintiffs allege that Rushmore violated § 559.72(9), because it had "no legal right to seek collection of these amounts . . . and was in fact enjoined from doing so pursuant to bankruptcy discharge of the subject amounts." (Id. ¶ 83).[5] Finally, in Count IV, Plaintiffs seek a declaration that Rushmore's conduct was unlawful, an injunction prohibiting Rushmore from sending documents requesting payment on discharged debts, and an order requiring Rushmore to "disgorge all ill-gotten gains" under the Declaratory Judgment Act, 28 U.S.C. § 2201. (Id. ¶¶ 87-106).

## II.   STANDARD FOR CLASS CERTIFICATION

Pursuant to Federal Rule of Civil Procedure 23(a), class certification is appropriate if "(1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims or defenses of the representatives are typical of the claims and defenses of the unnamed members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187-88 (11th Cir. 2003); Rule 23(a)(1)–(4). These four requirements "are designed to limit class claims to those 'fairly encompassed' by the named plaintiffs' individual claims." *Piazza v. Ebsco Inds., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). The party seeking class certification must establish these four prerequisites to class certification, commonly referred to as the "numerosity, commonality, typicality, and adequacy of representation"

---

[5] By Order dated May 3, 2017, this Court granted Summary Judgment to Rushmore on Count III of Plaintiff's Complaint asserting that Rushmore's Request for TIN violated the FCCPA. Therefore certification is sought on Counts I, II, and IV only.

requirements, as well as one of the alternative requirements set forth in Rule 23(b). See *Valley Drug*, 350 F.3d at 1188.

Here, Plaintiffs seeks certification under Rule 23(b)(3), which further states:

> A class action may be maintained if Rule 23(a) is satisfied and if:
> …
>> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>>
>>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>>
>>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>>
>>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>>
>>> (D) the likely difficulties in managing a class action.

Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. § 1692k(a) and (b) for FDCPA class actions. 15 U.S.C. § 1692k(a) and (b).

Plaintiffs seek Rule 23(b)(3) certification of the following Class:

> All Florida consumers who (1) have or had a residential mortgage loan serviced by Rushmore Loan Management Services, LLC, which Rushmore obtained when the loan was in default; (2) received a Chapter 7 discharge of their personal liability on the mortgage debt; and (3) were sent a mortgage statement dated September 11, 2013 or later, in substantially the same form as Mortgage Statement I and/or Mortgage Statement II, and was mailed to the debtor's home address[6] in connection with the discharged mortgage debt.[7]

---

[6] The "home address" limitation in this class definition is designed to exclude from the class any statements that may have been sent to debtor's counsel instead of directly to the debtor.

[7] Mortgage Statement I is attached as Exhibit A, and Mortgage Statement II is attached as Exhibit B.

Because the trier of fact will have to determine whether Mortgage Statement I and/or Mortgage Statement II violate the FDCPA and/or the FCCPA, such determinations with turn on standardized documents issued post discharge.  Plaintiff's Declaratory Judgment Act claim will stem directly from any violation of the FDCPA and is certifiable for the same reasons.

As explained more fully below, cases challenging potentially misleading debt collection letters are routinely certified. *See, e.g., Prindle v. Carrington Mortgage Services, LLC*, 2016 WL 4466838, at *11 (M.D.Fla. 2016) ("The [class certification] Motion is due to be granted to the extent Prindle seeks certification of a class based on receipt of the June 2013 Statement."); *Baez v. LTD Financial Services, L.P.*, 2016 WL 3189133, at *5 (M.D.Fla. 2016)("All members experienced the same factual circumstances which caused this lawsuit: they all received the same dunning letter from LTD seeking partial payment on a time-barred debt without disclosing the legal consequences of such a partial payment."); *Agan v. Katzman & Korr, P .A.,* 222 F.R.D. 692 (S.D.Fla.2004); *Fuller v. Becker & Poliakoff, P.A.,* 197 F.R.D. 697 (M.D.Fla.2000); *Swanson v. Mid Am, Inc.,* 186 F.R.D. 665, 666-69 (M.D.Fla.1999); *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp.*, No. 8:08-CV-493-T-26TGW, 2008 WL 3850657 (M.D. Fla. Aug. 14, 2008).  The reason that dunning letter cases are so readily certifiable is because a jury can view the content of the form communications and determine for all class members whether they violate the FDCPA and the FCCPA.  Moreover, the "least sophisticated consumer" standard that is applicable to both FDCPA and FCCPA claims is an objective standard which means that there are no individual interpretations or reliance issues to contend with. *See Jeter v. Credit Bureau, Inc*., 760 F.2d 1168, 1172-75 (11th Cir. 1985).

## A.     THE RULE 23(a) CRITERIA ARE SATISFIED

All requirements of Rule 23(a) of the Federal Rules of Civil Procedure are satisfied by

the proposed Class.

### 1.   Numerosity

The Class is so numerous that joinder of all members is impractical.  Fed. R. Civ. P. 23(a)(1).  The focus of this inquiry "is not whether the number of proposed class members is 'too few' to satisfy the Rule, but 'whether joinder of proposed class members is impractical.'"  *Sharf v. Financial Asset Resolution, LLC*, 295 F.R.D. 664, 669 (S.D. Fla. January 16, 2014) (quoting *Armstead v. Pingree*, 629 F.Supp. 273, 279 (M.D. Fla. 1986)).  The Rule does not establish a precise numerical threshold, but parties seeking class certification "must make reasonable estimates that the class to be certified will satisfy the numerosity requirement."  *Williams v. Wells Fargo Bank, Nat'l Ass'n*, 280 F.R.D. 665, 672 (S.D. Fla. 2012).

Rushmore stipulates to the numerosity prong of Rule 23(a).  Specifically, Rushmore stipulates that are more than 40 individuals who received account statements in the form of Exhibit B to the Complaint after receiving their bankruptcy discharge.   The Defendant stipulated that the class consists of more than 40 class members and is therefore sufficiently numerous. (Ex. C, Bennett depo at 54 – 55)[8].  Therefore, the numerosity element of Rule 23 is satisfied.

### 2.   Commonality

Rule 23(a)(2) of the Federal Rules of Civil Procedure requires "questions of law or fact common to the class."  "This part of the rule does not require that all the questions of law and fact raised by the dispute be common or that the common questions of law or fact predominate over individual issues."  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (internal quotations and citation omitted).  Rather, commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members.

---

[8] "Mr. Lynch:  No. we're going to oppose certification like crazy for a lot of reason, but on the one prong numerosity, we would stipulate to that. … Mr. Story:  More than 40? Mr. Lynch:  Yes."  (Ex. C, Bennett depo at p. 54-55).

*Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). For purposes of Rule 23(a)(2), even a single common question of law *or* fact will do. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Here, there are questions of fact or law common to the class, which predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(a)(2), Fed. R. Civ. P. 23(a)(3). These common questions focus on the Account Statements and include, but are not limited to:

    a.     Whether the account statements were an attempt to collect a debt;

    b.     Whether, given the relationship of the parties, Defendant's communications violated the FDCPA;

    c.     Whether, given the relationship of the parties, Defendant's communications violated the FCCPA;

Each of these common questions will lead to answers common to the Class, advancing the litigation for all Class members "in one stroke." See *Dukes*, 131 S.Ct. at 2551. These are virtually the same three common issues found by the Court in *Prindle.*

> As to the second purportedly common question, because the least-sophisticated consumer standard is objective, and Carrington conceded at oral argument on May 9, 2016, that that standard does not take into account the individual circumstances of a plaintiff, see Tr. of May 2016 Hearing at 69–70, the Court must examine only the mortgage statement in determining whether it violated the FDCPA. As such, whether the mortgage statement would be false, deceptive, or misleading from the perspective of the least sophisticated consumer presents a common question because it may be decided "in one stroke" based on the language of the statement itself.

*Prindle* at P. 9.

Many courts have reached similar conclusions in FDCPA and FCCPA class actions involving written collection letters. See, *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 668

(M.D.Fla. 1999)("To establish commonality, it is sufficient that plaintiff allege that all class members received the same collection letter.")   "The very definition of this class logically involves common questions, such as whether the subject collection letter violates 15 U.S.C. §1692g." *Macarz v. Transworld Systems, Inc.*, 193 F.R.D. 46, 49 (D. Conn. 2000).

This is exactly what Plaintiffs have alleged here.   The collection activities of the Defendant -- like those of any mortgage servicer of defaulted loans or any debt collection firm-- are systematized.   The collectors must necessarily act indiscriminately in the treatment of consumers from whom they attempt to collect debts by means of standard collection documents. Rushmore's corporate representative testified that Rushmore routinely sends automatically generated account statements to all debtors.   (Ex. C, Bennett depo at 39).

Rushmore's corporate representative further testified that it tracks the date of discharge in the bankruptcy notes segment of its computer system:

> Q:     When Rushmore sent these documents to the plaintiffs, were they aware that the plaintiffs had received a discharge in bankruptcy?
>
> A:     The dates in these documents appear to be post knowledge of the bankruptcy.
>
> Q:     Where is it documented in Rushmore's files that Randy and Tabetha Sellers had filed bankruptcy and received a discharge?
>
> A:     In our bankruptcy notes.

(Ex. C, Bennett depo at p. 40 line 2-10).   Accordingly, those class members who were issued Mortgage Statement I and Mortgage Statement II post discharge can be readily ascertained.

Further, the Mortgage Statements are standardized statements issued to all debtors:

> Q:     Okay. And then your understanding of a term "discharge" of a -- order of discharge in a bankruptcy case, what's your understanding of the Exhibit 9, which is an order of discharge?

A:      That the United States Bankruptcy Court discharged the debtors on this particular -- in this particular case.

Q:      Okay. But you understand that -- is your understanding of a discharge that their debts were wiped out?

A:      My understanding is they are no longer obligated to pay the debt.

Q:      Okay. So was it the policy of Rushmore to send the same billing statement to borrowers who have received an order of discharge in a bankruptcy as to borrowers who have never filed bankruptcy or been dismissed from bankruptcy?

A:      Yes.

Q:      So these billing statements are not at that time tailored to customers who had received a discharge in bankruptcy?

A:      Each of these statements do reference and disclaim to homeowners that have been discharged that this is just for information purposes.

Q:      Okay. But if the Sellers had never filed bankruptcy, they would still have received the same billing statements in 2014?

A:      That's correct.

(Ex. C, Bennett depo at p. 44 line 10 through p. 45 line 12).

Accordingly, the common questions that exists pertain to Plaintiffs' assertion that "Mortgage Statement I" and "Mortgage Statement II" violate the FDCPA and/or the FCCPA as interpreted by this Court in its summary judgment order.  (Exhibits A and B).  Regardless of whether Plaintiffs or Rushmore is ultimately correct on the deceptive nature of the statements as advanced, the form documents are common and the interpretation of those documents will also be common.  Whether Rushmore's practice of sending Mortgage Statements I and II after debts have been discharged violates the FDCPA and/or the FCCPA will turn on the language of these uniform documents when viewed under the "least sophisticated consumer" standard.   Therefore,

the entire class has been subject to this common course of conduct and the commonality element of Rule 23 has been established.

### 3.    Typicality

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that "the claims or defense of the representative parties [be] typical of the claims or defenses of the class."  "Typicality … does not require identical claims or defenses."  *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).  Rather, typicality "is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory."  *Id.*  "The typicality requirement is generally met if the class representative and the class members received the same unlawful conduct irrespective of whether the fact patterns that underlie each claim vary." *Mesa v. Ag-Mart Produce, Inc.*, No. 2:07-cv-47-FtM-34DNF, 2008 WL 2790224, at *6 (M.D. Fla. July 18, 2008). The main focus of the typicality requirement is that the plaintiffs will advance the interests of the class members by advancing their own interests. *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 698 (S.D. Fla. 2004). "A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of the other members of the class." *Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 604–05 (S.D. Fla. 2003) (quoting *Kornberg,* 741 F.2d at 1337).

Here, the Plaintiffs' claims are typical of the claims of the Class because they all arise from identical allegations, namely that Rushmore attempts to collect debts that have been discharged in Bankruptcy by sending Mortgage Statement I and Mortgage Statement II.  The essence of Plaintiffs' claims is precisely the same for all members of the putative class, and Rushmore's defenses thereto are also identical.  For example, because the putative class consists

12

only of debtors that have been discharged from their mortgage debts, whether Mortgage Statement I and II were an attempt to collect a debt or whether they were merely for informational purposes is a common and typical issue to be decided by the jury for all class members.  Similarly, whether Mortgage Statement I and II are deceptive or misleading under ether the FDCPA or the FCCPA are similarly typical.  The objective nature of both claims under the least sophisticated consumer standard essentially makes this legal determination both common and typical.  Because a determination as to Rushmore's liability for Mortgage Statements I and II will necessarily advance the interests of all similarly situated Class members, Plaintiffs' facts and claims are typical of the facts and claims of all other members of the proposed Class.

Plaintiff took out a mortgage loan on her home at 6045 Oak Leaf Road, Keystone Heights, Florida 32656 ("the Loan").  The Loan was for personal, family, or household purposes and it is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and Fla. Stat. § 559.55(1). On or about February 16, 2011, Plaintiffs filed a voluntary Chapter 7 petition in U.S. Bankruptcy Court. On June 2, 2011, Plaintiffs received a Chapter 7 discharge. (Ex. C, Bennett depo at 11).  Pursuant to the Chapter 7 bankruptcy discharge order, Plaintiffs were fully released from any and all personal monetary liabilities on the subject loan.

On June 27, 2013, the Loan was transferred or assigned to Rushmore for servicing. (Ex. C, Bennett depo at 14).  The loan was in default at the time it was transferred to Rushmore. (Ex. C, Bennett depo at 15-16). Defendant sent a number of automatically generated communications which asserted that Plaintiffs owed a debt based on the mortgage loan. (Ex. C, Bennett depo at 39-40).  These communications include Mortgage Statement I and Mortgage Statement II.  *Id.*

Furthermore, Rushmore's Corporate Representative testified that the Sellers were not treated any differently than any other homeowners:

> Q:     In reviewing the plaintiff, the Sellers', file for the deposition today, did you observe anything in the file that was atypical of the way that Rushmore handles its loans?
>
> MR. LYNCH: Object to form, but you can answer.
>
> A:     In my research of this file I didn't see anything that raised an eyebrow or was outside of the training that I had received or policies that I have read for this specific loan.
>
> BY MR. STORY:
>
> Q:     There is no specific way that Rushmore singled out the Sellers and treated them differently, correct?
>
> MR. LYNCH: Object to form, but you can answer.
>
> A:     I don't see we treated them any differently than any other homeowner.

(Ex. C, Bennett depo at 61-62).

In *Prindle*, the Court found under similar facts that "[h]er FDCPA claim based on that Statement is typical of all other putative class members who received a mortgage statement in substantially the same form after receiving a discharge." *Prindle v. Carrington Mortgage Services, LLC*, 2016 WL 4466838, at *6 (M.D.Fla., 2016). This same rationale applies to both the Sellers' FDCPA and FCCPA claims because both claims arise from form uniform Mortgage Statements I and II which do not vary from class member to class member. Even if the FCCPA requires that Rushmore knowingly, issued the mortgage statements at issue, that issue will also turn on common evidence regarding Rushmore's knowledge of a bankruptcy discharge, which has been shown to exist in the bankruptcy notes within Rushmore's computer system. (Ex. C, Bennett depo at p. 40 line 2-10). Furthermore, the additional disclaimer language contained in

Mortgage Statement II and the removal of the payment coupon indicates that Rushmore was fully aware that the consumer had been discharged from the debts at issue when it sent the Mortgage Statements.  If the fact finder determines that the FDCPA has been violated, then Plaintiffs can seek injunctive relief under the Declaratory Judgment Act to prevent Rushmore from continuing its deceptive conduct.  There is nothing individual or peculiar about Count' IV that would prevent certification.  Therefore, the typicality requirement of Rule 23(a) is satisfied for both the FDCPA and FCCPA claims pertaining to both Mortgage Statement I and Mortgage Statement II.

### 4.   Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "[T]his requirement applies to both the named plaintiff and counsel," and "the requirement's purposes is to protect the legal rights of absent class members."  *London v. Wal-Mart Stores*, 340 F.3d 1246, 1253 (11th Cir. 2003) (internal quotations omitted).  Additionally, this requirement is meant "to uncover conflicts of interest between named parties and the class they seek to represent."  *Id.*

Both prongs of the "adequacy" test are met here.  First, Plaintiffs have retained counsel experienced in class action litigation to prosecute her claims and those of the Class.  Plaintiffs' counsel has been certified to represent classes in state and federal courts throughout the country, including the Middle District of Florida.  (Ex. D, Decl. of B. Warwick).

As to the adequacy of the proposed class representative, a named plaintiff will be adequate as long as (1) she is qualified, and (2) she has no substantial conflict of interest with the class. *Valley Drug Co. Geneva Pharma., Inc*, 350 F.3d 1181, 1189 (11th Cir. 2003).  A named plaintiff is "qualified" if she holds a basic understanding of the facts and legal theories

underpinning the lawsuit and is willing to shoulder the burden of litigating on the class's behalf. *See New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007). At the certification stage, inquiry into a proposed representative's qualifications is not especially stringent. *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987) (stating that certification should only be denied for inadequate representation where the plaintiff's lack of knowledge and involvement with the case essentially amounts to abdication of her role in the case), *cert. denied*, 485 U.S. 959 (1988).

Plaintiff, Tabetha Sellers, explained the misleading nature of the communications from Rushmore in a nutshell as follows:

> THE WITNESS: … Deciding to do a bankruptcy was not an easy decision for us. It wasn't easy to know that we were going to have to do this. So once we decided to do that and we got discharged, we honestly thought it's going to take, we're going to have to start over, but we can do it. We can rebuild our credit. And that's what we have been doing since we were discharged, was trying to rebuild our credit and trying to have a fresh start from all of this. And it's been a lot of years between each mortgage company and then the bankruptcy, and then thinking that we've taken care of everything legally that we were supposed to take care of.
>
> And then to start getting this, these statements every month, and seeing it just go up and up and up. And then with what I was being told on the phone by the Rushmore representative, I honestly thought, oh, my gosh, are we going to be even in a worse hole than we were before we filed the bankruptcy? That was my thought process.

(Ex. E, T. Sellers depo at 58-59).

This statement from her deposition indicates that she understands the deceptive nature of the Mortgage Statements to those who are receiving them post discharge. There is no indication that either of the named Plaintiffs do not have a basic understanding of the claims and their deposition testimony shows their willingness to litigate on behalf of the class. Accordingly, the Sellers are qualified to represent the class.

A named plaintiff will have a substantial conflict of interest which precludes her from acting as class representative when her interests are so antagonistic to the interests of the absent class members that she cannot fairly pursue the litigation on their behalf.  *See Carriuolo v. Gen. Motors Co.*, No. 15-14442, 2016 WL 2870025, at *8 (11th Cir. May 17, 2016); *Baez v. LTD Financial Services, L.P.*, 2016 WL 3189133, at *4 (M.D.Fla., 2016).

There is no conflict between Plaintiffs and the Class they seek to represent.  To the contrary, Plaintiffs share with the Class the same interest in establishing that Defendant violated the FDCPA and/or the FCCPA as result of its business practices in sending Mortgage Statement I and II to consumers after their debt has been discharged.  As stated above, there is nothing peculiar about the Sellers' transaction that would make them inadequate to represent the class in this case.  Because Plaintiffs and class counsel will adequately protect the interests of the Class, the adequacy prong of Rule 23 is also established.  Plaintiffs now turn to Rule 23(b) factors.

## B.    THE RULE 23(b)(3) FACTORS ARE ALSO SATISFIED

An action may be maintained as a class action if the four elements described above are satisfied, and in addition, certain other conditions under Rule 23(b) are also met.  Here, Plaintiffs assert that the certification is appropriate pursuant to Rule 23(b)(3), which affords class status when:

> [T]he Court finds that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a Class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).  These two elements are commonly referred to as "predominance" and "superiority."  Plaintiffs will address each in turn.

### 1.    Predominance

At its core, the predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).  The Supreme Court recently reiterated: "Rule 23(b)(3) ... does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claims [is] susceptible to classwide proof,'" but that "common questions '*predominate* over any questions affecting only individual [class] members.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1196 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2552 n.6 (2011)) (emphasis added). Plaintiffs must make a "showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Id.* at 1191.

Where the litigation is defined by individualized inquiries regarding the defendant's possible liability to each class member, predominance is lacking and certification should be denied. *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010). However, where the class members seek answers to the same questions and those answers would "have a direct impact on every class member's effort to establish liability," common issues predominate and certification should be granted. *Id.*

Here, there are three common questions that must be answered for Mortgage Statement I and Mortgage Statement II.  First, do either or both statements constitute an attempt to collect a debt?  Because the class is limited to only those class members that previously had their mortgage debt discharged, and Rushmore asserts that it only sends statements to consumers post-bankruptcy for information purposes only, this common issue will turn on common evidence, and therefore is a predominating common question.

Second, whether Mortgage Statement I or II violates section 1692(e) or (f) of the FDCPA by misleading the least sophisticated consumer is a predominating common question that turns on the language of each Mortgage Statement and not on individualized evidence.  There are no individual issues that would make either Mortgage Statement misleading to some and not to others as both must be examined under the objective least-sophisticated consumer standard.  As a result, the FDCPA claim is likewise a predominating common question under Rule 23(b)(3).

Third, the jury will have to determine whether Rushmore attempted to enforce a debt that it knew was not owed or "legitimate" when it issued Mortgage Statements I and II to post-discharge debtors like Plaintiffs and the class.  See, Fla. State 559.72(9).  There is adequate testimony in the record that Rushmore maintains notes in its files regarding when a debtor files for bankruptcy protection and receives a discharge.  (Ex. C, Bennett depo at  40).  Moreover, Rushmore uses the same monthly Account Statements for people who have and who have not filed for bankruptcy.  (Ex. C, Bennett depo at 45).   Thus, if the jury determines that Rushmore was indeed attempting to collect a debt from Plaintiffs and class with full knowledge that the debt had been discharged, liability could be determined for the class based upon common evidence of Rushmore's bankruptcy practices.   There is no evidence of an individualized nature once Rushmore received notice of the discharge.  As a result, common questions predominate this third question as well.  *See Prindle*, 2016 WL 4466838, at *8 (M.D.Fla. 2016)(finding that "common questions predominate" in post-discharge mortgage statement class action.).

Rushmore's defenses are likewise predominating common questions.  First, it asserts that Mortgage Statements I and II were not attempts to collect debts but were merely for informational purposes.   To prove its argument Rushmore points to the disclaimer language contained in Mortgage Statements I and II.  Critically, it does not point to any individual facts or

circumstances.  Accordingly, Rushmore will be able to make this common argument to the jury

on behalf of the statements sent to all class members post-discharge.

Accordingly, both the claims and defenses involved here present predominating common

questions which can be resolved for all class members in satisfaction of the predominance prong

of Rule 23(b)(3).

### 2.    Superiority

"[W]hen common issues predominate over individual issues, a class action lawsuit

becomes more desirable as a vehicle for adjudicating the plaintiffs' claims."  *Nelson v. Mead*

*Johnson Nutrition Co.*, 270 F.R.D. 689, 698 (S.D. Fla. 2010) (citing *Klay v. Humana*, 382 F.3d

1241, 1269 (11th Cir. 2004)).  Moreover, "[c]ourts are generally reluctant to deny class

certification based on speculative problems with case management."  *Klay*, 382 F.3d at 1273.

Rule 23(b)(3) contains a list of factors to consider when making a determination of

superiority:

> (A) the class members' interest in individually controlling the prosecution or
> defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy
> already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the
> claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Rule 23(b)(3).

None of the four factors listed in Rule 23(b)(3) are present here.  First, there is no

evidence that absent class members have an interest in pursuing these claims individually.

Given the complexity of the issues, it is unlikely that the vast majority of class members could

even find counsel willing to pursue such claims on an individual basis.  Further, Plaintiffs are unaware of any other litigation against Rushmore concerning similar issues.

Third, this Court is particularly well suited for determining these issues given the other similar cases and claims that are pending in this judicial district and within the Eleventh Circuit, more generally.  See *Prindle v. Carrington Mortgage Services*, LLC, 2016 WL 4466838, at *7 (M.D.Fla., 2016); *Helman v. Bank of America, N.A.*, ___ F. App'x ____, No. 15-13672, 2017 WL 1350728 (11th Cir. Apr. 12, 2017).  Certainly, there is no other forum that has a stronger interest.

Finally, there are no issues which would make managing this case as a class action particularly difficult.  In fact, a class action in this case is superior to other available methods for the fair and efficient adjudication of the controversy because a class resolution of the issues described above outweighs the difficulties in management of hundreds of separate and individual claims based upon common Mortgage Statements issued after discharge.  Both Rushmore and members of the class have a common interest in determining what is and what is not misleading when communicating about mortgage debts post discharge.  Individual cases could lead to varying outcomes, which could lead to inconsistent statements of law.

Furthermore, class certification is particularly appropriate in light of the relatively small amount of the statutory damage claims at issue.  In numerous cases, courts have recognized that Rule 23(b)(3) certification is particularly appropriate for consumer claims that involve a relatively small recovery.  See, e.g., *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004) ("Representative actions … appear to be fundamental to the statutory structure of the FDCPA."); See also, e.g., *Amchem*, 521 U.S. at 617 ("The policy of the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive

for any individual to bring a solo action prosecuting his or her rights.").   The Class here is generally limited to the recovery of statutory damages of up to $1,000 per person under the FDCPA.  15 U.S.C. § 1692k(a).  This relatively modest recovery for statutory violation is not a huge incentive to bringing individual actions.

As one Court has explained, FDCPA class actions are not only certifiable, but are needed:

> We do not assume that class members understand the provisions [of the FDCPA] well enough to know that it may be financially worthwhile to spend the time and effort to litigate these matters. Also, the number of potential class members makes concentration of these claims desirable. We also note that decertifying this class would (theoretically) create a perverse incentive for debt collectors using unfair practices to use them as widely as possible, in order to prevent a class action from being certified.

*Hicks v. Client Services, Inc.*, 257 F.R.D. 699, 700 (S.D.Fla. 2009).

Another court has also noted:

> Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller, and Kane have discussed in analyzing consumer protection class actions such as the instant one, "typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated." 7B Wright et al., § 1778, at 59; see, e.g., *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (" "Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.''). The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in class action form.

*Lake v. First Nationwide Bank*, 156 F.R.D. 615 at 628, 629 (E.D.Pa. 1994).

These same arguments apply here because absent a class action, there will be little to no incentive for Rushmore to amend its business practices.  Accordingly, this Court should find that the superiority element of Rule 23(b)(3) is also satisfied.

## III.    CONCLUSION

Therefore, Plaintiffs respectfully pray that the Court certify the Class set forth above

against Defendant, appoint them as representative and their attorneys as counsel for the Class.

Dated: June 1, 2017                              **VARNELL & WARWICK, P.A.**

                                      By:    /s/ Brian W. Warwick
                                             Brian W. Warwick
                                             Florida Bar No.:  0605573
                                             Janet R. Varnell
                                             Florida Bar No.:  0071072
                                             P.O. Box 1870
                                             Lady Lake, FL  32158
                                             Telephone: (352) 753-8600
                                             Facsimile:  (352) 504-3301
                                             jvarnell@varnellandwarwick.com
                                             bwarwick@varnellandwarwick.com
                                             kstroly@varnellandwarwick.com

                                             **MAX STORY, P.A.**
                                             Max Story
                                             Florida Bar No: 527238
                                             328 2nd Avenue North, Suite 100
                                             Jacksonville Beach, FL  32250
                                             Telephone:  (904) 372-4109
                                             Facsimile:  (904) 758-5333
                                             max@maxstorylaw.com

                                             **Attorneys for Plaintiff**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of June, 2017, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record identified below via transmission of Notices of Electronic Filing generated by CM/ECF:

JUSTIN WONG
TROUTMAN SANDERS, LLP
600 Peachtree Street, N.E.
Suite 5200
Atlanta, GA  30308
Telephone:  (404) 885-3974
Facsimile:  (404) 885-3900
*justin.wong@troutmansanders.com*

JOHN C. LYNCH
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
john.lynch@troutmansanders.com

AMY L. DRUSHAL
TRENAM, KEMKER, SHCARF, BARKIN
 FRYE, O'NEILL & MULLIS, P.A.
101 E. Kennedy Blvd., Suite 2700
Tampa, FL  33602
adrushal@trenam.com

Attorneys for Defendant
RUSHMORE LOAN MANAGEMENT SERVICES, LLC

/s/ Brian W. Warwick
Brian W. Warwick